UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 13-61582-CIV-COHN-SELTZER

STACEY MATTOCKS, an individual,

    Plaintiff,
v.

BLACK ENTERTAINMENT TELEVISION,
LLC, a District of Columbia limited liability
company,

    Defendant.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT

Defendant, BLACK ENTERTAINMENT TELEVISION LLC ("BET"), by and through undersigned counsel, and pursuant to Rule 12(b)(6), Fed. R. Civ. P., moves the Court to enter an order dismissing Plaintiff's Amended Complaint.

**I.     Introduction**

Plaintiff alleges that Defendant BET breached a license it had granted Plaintiff to utilize BET's intellectual property relating to BET's series "The Game"[1] on Plaintiff's Facebook page by withdrawing the permission. The allegations of Plaintiff's Amended Complaint are entirely inconsistent with the alleged breach of such license. Moreover, Plaintiff relies on the same conduct alleged to support her contract claim to expand her claims to allege facially inapplicable tort claims. Count I (Tortious Interference), Count II (Breach of Contract), Count III (Breach of Good Faith and Fair Dealing) and Count IV (Conversion), all fail to state claims upon which relief may be granted, and should be dismissed.

---

[1] "The Game" is BET's hit show that follows the lives of professional football players and their significant others as they navigate fame, family and friends. www.bet.com/shows/the-game.html

II.     Background

Plaintiff alleges that in February, 2011, BET granted a license to Plaintiff to utilize, on Plaintiff's Facebook page, BET's intellectual property relating to BET's television series, "The Game." BET agreed that it would not change the administrative rights to the Facebook page featuring "The Game" to exclude Plaintiff. In exchange, Plaintiff would provide BET with administrative access to the Facebook page and the ability to update the content in BET's "sole discretion." The letter agreement states, in its entirety:

> This letter confirms our agreement that **you will provide BET** Interactive, LLC ("BET") **with administrative access to the Facebook page (the "Page") for "The Game"** and that **BET will not change the administrative rights to the Page to exclude you from the Page**. You also agree that *BET may update the content on the Page from time to time, as determined by BET in its sole discretion*.

Amended Complaint, DE 5, ¶23. The parties proceeded under the agreement. Id. ¶25.

Plaintiff thereafter began negotiating with BET about possible employment by BET; however, in June 2012, Plaintiff was dissatisfied with the negotiations and decided that "until such time as the parties could reach an amicable and mutually beneficial agreement" concerning her potential employment, "she would demote" BET's access to the Facebook page. Id. at ¶33. See also, DE 5, ¶ 61 ("In June 2012, following an impasse between Mattocks and BET over Mattocks' potential employment, Mattocks demoted BET's Administrative Access status . . .").

On August 27, 2012, BET wrote to Plaintiff terminating the license, stating:

> We regret to inform you that your actions to restrict and, at times, completely block BET's access to the Facebook Page that you created for The Game (the "Game FB Page") materially breaches the letter agreement ("Letter Agreement") between us, dated February 12, 2011 which granted BET rights to the Game FB Page. Accordingly, the Letter Agreement is hereby terminated effective immediately.

> Further, BET hereby rescinds any and all rights that may have been previously granted to you directly, implicitly or otherwise, to use BET intellectual property ("BET Material").  You are respectfully directed to cease and desist from using all BET Material in any and all media immediately and further advised that BET expressly reserves its various rights and remedies as copyright and trademark owner in connection with willful infringement of our intellectual property.

Amended Complaint, DE 5, ¶ 35 and Ex. B.

Plaintiff alleges that, "Thereafter, upon information and belief, BET immediately contacted Facebook and instructed Facebook to remove the FB page, without first providing Mattocks notice." Amended Complaint, DE 5, ¶ 37.  This alleged conduct is the basis of Plaintiff's Breach of Contract claim (Count II) against BET:

> 64.   **By causing the removal of the FB Page, BET breached the Letter Agreement by excluding Mattocks from the FB Page**.

Amended Complaint, DE 5,  ¶¶ 63, 64.

As set forth in Exhibit C to the Amended Complaint, "Facebook Statement of Rights and Responsibilities," under the category, "Protecting Other People's Rights," it is stated, *inter alia:*

> 1.  You will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law. . . .4.  If we remove content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal. 5.  If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate.

There is no allegation that Plaintiff ever appealed the removal of the Facebook page to Facebook, despite Facebook's rule which allowed her to do so if she truly believed content was removed without cause.

As detailed below, Plaintiff's claim for breach of contract, as well as her effort to expand the purported contract claim into tort claims and extra-contractual duties, all fail to state claims upon which relief may be granted, and the Amended Complaint should be dismissed pursuant to

Rule 12(b)(6).  Additionally, or in the alternative, as set forth below in Section E, the improper prayers for punitive damages for contract claims (Counts II and III) must be dismissed.

### III.   Legal Standard

While BET does not agree with the allegations of the Amended Complaint, factual allegations must be evaluated under the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950-51, 173 L.Ed.2d 868 (2009) (On a Rule 12(b)(6) motion to dismiss, <u>when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible</u>);  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (complaint is subject to dismissal <u>"when its allegations-on their face-show that an affirmative defense bars recovery."</u>).  *See also American Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1289-90 (11th Cir. 2010) (under *Iqbal,* "the <u>tenet that a court must accept as true</u> all allegations contained in a complaint <u>is inapplicable to legal conclusions</u>.").

### IV.   Argument

####   A.   Count I:  Plaintiff Fails to State a Claim for Tortious Interference

Count I alleges that by directing Facebook to remove the Facebook page, "BET intentionally and unjustifiably interfered with the contract between Mattocks and Facebook."  Amended Complaint, DE 5, ¶ 55.  Not only is the action alleged the same action relied on in the claim for breach of contract, but the allegations on their face concede that Defendants' actions were taken to protect BET's own financial interests in its intellectual property.  The Amended Complaint sets forth that BET was seeking to protect its intellectual property by halting what it concluded was Plaintiff's unauthorized use of that property.  As such, the conduct is, under well-

settled law, not actionable as "tortious interference." *See, e.g., Horizons Rehabilitation, Inc. v. Health Care And Retirement Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002):

> Under Florida law, a party is privileged to act, and his actions are non-actionable, if the actions are taken to safeguard or promote the party's own financial interests. [citations omitted].

*See also Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281 (Fla. 3d DCA 2007) (tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage); *Swiss Watch Intern., Inc. v. Movado Group, Inc.*, No. 00-7703, 2001 WL 36270980 (S.D. Fla. June 21, 2001 ) (court dismissed claim for tortious interference because allegations made it clear that defendant's conduct was taken in furtherance of own interests and non-actionable); *Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1222 (Fla. 3d DCA 1980), *rev. denied,* 392 So. 2d 1371 (Fla. 1980), *cert. denied,* 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981) ("No cause of action for intentional interference exists which is the consequence of a rightful action."); Restatement (Second) of Torts § 773 (Asserting a Bona Fide Claim).

The tortious interference claim must be dismissed as a matter of law.

**B.     Count II:  Plaintiff Fails to State a Claim for Breach of Contract**

Count II alleges that after notifying Plaintiff to cease use of its intellectual property, BET notified Facebook of Plaintiff's improper continued use of the intellectual property[5], and that Facebook thereafter removed Plaintiff's Facebook page.  The specific alleged breach of the parties' contract is that "by causing the removal of the FB Page, BET breached the Letter Agreement by excluding Mattocks from the FB Page." Amended Complaint, DE 5,  ¶¶ 63, 64. Plaintiff fails to state a claim for breach of contract as the conduct alleged does not come within

---

[5] Plaintiff admits that she did *not* immediately comply with BET's cease and desist letter, alleging that the Facebook page was removed by Facebook "within a few days" after the letter, conceding that BET's intellectual property was still being used until that time. Amended Complaint ¶ 38.

the terms of the parties' contract. *Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.,* 941 So. 2d 396, 398 (Fla. 4th DCA 2006) (the elements of a breach of contract action are: (1) a valid contract; (2) a breach; and (3) damages).

While the existence of the "Letter Agreement" and purported damages are alleged, there is no allegation of a breach of the contract's actual terms.  The Letter Agreement contains no express term that BET would not notify Facebook about unauthorized use of BET's intellectual property, but only that "**BET will not change the administrative rights to the Page to exclude you from the Page**".  There is no allegation that BET changed the administrative rights to the Page to exclude Plaintiff, and Plaintiff's effort to recast events to try to come within the contract provisions fails.

Moreover, Plaintiff's own allegations show that BET was relieved from any obligations it had under the contract due to Plaintiff's own prior breach.  *See, e.g., Posik v. Layton*, 695 So. 2d 759, 762 (Fla. 5th DCA 1997) ("One need not continue to perform a contract when the other party has first breached.").  The express terms of the parties' agreement were clear and unambiguous, namely that BET would have full administrative rights to the Facebook page to update the Facebook page in its sole discretion and, in exchange, Plaintiff had permission to use BET's intellectual property.  Plaintiff admits that the purpose of the Letter Agreement was to ensure that BET would be able to "post articles, links, videos, etc." on the Facebook page, yet after her admitted demotion of BET's administrative rights, BET could only "respond to and delete user comments, send messages to followers, and create advertisements."  Amended Complaint ¶¶ 22, 34.  Indeed, Plaintiff specifically states that BET's status was "demoted" below that of a "content creator" for the page.  Amended Complaint ¶ 34, n. 6.  Plaintiff further admits that the demotion of BET's rights was retaliatory, intending to create leverage for Plaintiff

during the parties' negotiations.  Amended Complaint ¶ 33.  BET did not revoke Plaintiff's license until Plaintiff admittedly and intentionally "demoted" BET's administrative rights so that BET could no longer update the Facebook page in its "sole discretion."

Plaintiff's allegations do not allege a breach of the terms of the contract and further show that Plaintiff herself breached the license agreement, thereby relieving BET from any obligations thereunder.  Accordingly, Count II must be dismissed.

### C. Count III: Plaintiff Fails to State a Separate Claim for Breach of "Good Faith and Fair Dealing"

Count III alleges that "by causing the removal of the Facebook page, BET breached the Letter Agreement" (DE 5, ¶ 73) and by failing to first provide Plaintiff with "notice or opportunity to cure her alleged breaches," BET breached its duty of good faith and fair dealing to Plaintiff.  (DE 5, ¶ 74).

To assert a valid claim for breach of good faith and fair dealing, Plaintiff must allege that: (1) the parties entered into a contract; (2) that Plaintiff did all, or substantially all, of the significant things contractually required; (3) that all conditions required for Defendant's performance had occurred; (4) that Defendant's actions [or omissions] unfairly interfered with Plaintiff's receipt of the contract's benefits; (5) Defendant's conduct did not comport with Plaintiff's reasonable contractual expectations under a specific part of the contract; and (6) Plaintiff was harmed by Defendant's conduct.  *In re Standard Jury Instructions--Contract and Business Cases*, 116 So. 3d 284, 322 (Fla. 2013).

The duty of good faith must relate to an express term of the contract.  "Because the implied covenant is not a stated contractual term, to operate it attaches to the performance of a specific or express contractual provision."  *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005).  As noted above, Plaintiff has not alleged the

breach of an express term of the contract, and specifically has not alleged that BET changed the administrative rights to the Facebook page.  In the absence of allegations of the breach of an express contractual term, there can be no separate claim for the breach of good faith and fair dealing.

Further, the parties' Letter Agreement contains no notice and cure provision, and the purported breach of the duty of good faith and fair dealing cannot be used to supply such a term. *See, e.g., In re Standard Jury Instructions--Contract and Business Cases*, 116 So. 3d 284, 324 (Fla. 2013) ("the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the contract's terms").  The parties had an opportunity to negotiate a notice and cure period for the improper use of BET's intellectual property but did not do so.  It is established that such provisions are substantive contractual terms negotiated by the parties and not an automatic and implied right.  *See, e.g., Point Productions A.G. v. Sony Music Entertainment, Inc.,* No. 93 CIV. 4001 NRB, 2000 WL 1006236 *3 n.9 (S.D.N.Y. July 20, 2000) ("Although both notice and cure provisions are unambiguous, we also take note of evidence proffered by Point that it specifically negotiated for such contractual protections, prior to executing the Agreement."); *Global Horizons, Inc. v. Department of Labor and Industries*, No. 38211–3–II.2010 WL 3639917 *5 (Wash. App. Sept. 21, 2010) ("Global aggressively negotiated for a notice and cure provision.");  *ALJ Capital I, L.P. v. David J. Joseph Co.,* 841 N.Y.S.2d 217 (Table) *5 (N.Y. Supp. 2007) (" . . the prompt written notice and Cure Period provisions were specifically negotiated by the parties").

Moreover, Plaintiff cannot contend that BET's assertion of its intellectual property rights *viv a vis* the Facebook page did not comport with her reasonable contractual expectations, where the Facebook rules that she agreed to themselves provide that Facebook will disable accounts

that violate others' intellectual property rights.  See Exhibit C to Amended Complaint, Protecting Other People's Rights, ¶¶ 1, 4.

As BET did not breach any express provision of the Letter Agreement and there was no obligation to provide notice or a right to cure, Plaintiff cannot establish a claim that BET breached its obligation of good faith and fair dealing.  As such, Count III of the Amended Complaint must therefore be dismissed.

> **D.** **Count IV:  Plaintiff Fails to State a Claim for Conversion Of "Likes" on Facebook**

Plaintiff's conversion claim is based upon allegations that Plaintiff had "garnered" a "significant number of 'Likes'" for the Facebook page,[6] that "the 'Likes' constituted a business interest for Mattocks," and that "upon information and belief," BET instructed Facebook "to take the 'Likes' from the FB Page and transfer them to BET's Facebook Page for the Show" which allegedly resulted in BET's Facebook page "suddenly … amass[ing] an alleged 6.2 million 'Likes.'"  Amended Complaint, DE 5, ¶¶ 78-81.

Even accepting Plaintiff's unfounded claim that "Likes" can be "transferred," Plaintiff's claim for "conversion" of the "Likes" fails as a matter of law, as Plaintiff has not, and cannot, allege the essential elements of conversion:

> To recover for civil conversion, **a plaintiff generally must demonstrate . . .: <u>(1) the right to property; (2) a demand for return of that property; and (3) the defendants' refusal to return property.</u>**

Fla. Jur. 2d., Conversion.  *See also, Murrell v. Trio Towing Serv., Inc.*, 294 So. 2d 331, 332 (Fla. 3d DCA 1974) (essence of conversion is the **<u>refusal to surrender</u>** possession of property after **<u>demand</u>** for possession by **<u>one entitled thereto</u>**).

---

[6] Plaintiff alleges: "A 'Like' on Facebook is equivalent to a customer's public endorsement of a product."  DE 5, p. 2, n. 1.

Here, Plaintiff has not alleged *any* of the essential elements of a conversion claim. There is no allegation that the "Likes" are Plaintiff's property, no allegation of any demand for return of the "property," and no allegation of a refusal to return.

The conversion claim fails at the outset because a "Like" is not personal property in which Plaintiff has any possessory interest. As the Facebook page itself makes clear, a Facebook user who bestows a "Like" upon a piece of content or a Page on Facebook remains in control of the "Like" at all times and is free to "Unlike" the Page or content as the user sees fit. *See*, "How do I unlike something?", www.facebook.com/help/226926007324633, copy attached hereto as Exhibit A.[7] To the extent a "Like" is anyone's "property" it belongs to the Facebook user, and Plaintiff has no possessory interest. *See, e.g, Carl v. Republic Security Bank*, 282 F. Supp. 2d 1358, 1371 (S.D. Fla. 2003) (conversion is wrongful dominion over property "to the detriment of the rights of the actual owner"); *Seymour v. Adams,* 638 So. 2d 1044, 1046-47 (Fla. 5th DCA 1994) (where plaintiff had no property interest in funds, plaintiff was unable to state a claim for conversion).

Moreover, Plaintiff makes no allegation that any demand was made upon BET to "return" any property or that such a demand was refused. There are therefore no elements of conversion present, and accordingly, Count IV must be dismissed.

---

[7] The Court may take judicial notice of this publicly available information for purposes of this Motion to Dismiss. *Krauser v. Evollution IP Holdings, Inc.,* 2013 WL 5313403 (S.D. Fla. Sept. 20, 2013) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."). *See also Horne v. Potter,* 392 F. App'x 800, 802 (11th Cir. 2010) ("Taking judicial notice of indisputable facts under Fed.R.Evid. 201(b) does not convert a motion to dismiss into a motion for summary judgment."). Fed.R. Evid. 201 provides: "The court may judicially notice a fact that is not in dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Facebook "How do I unlike something?" information is indisputable and satisfies Rule 201.

     **E.** **The Prayers for Punitive Damages for Breach of Contract Should Be Dismissed**

Plaintiff's two contract claims (Count II, Breach of Contract and Count III, Duty of Good Faith and Fair Dealing) each seek punitive damages. It is well settled that punitive damages are generally not recoverable for breach of contract, and may only be sought for conduct that amounts to an independent tort, which tort must be pled and proven. *See, e.g., Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 822-23 (Fla. 1996). Accordingly, there is no legal basis for Plaintiff's demand for punitive damages for the contract claims and if the Court determines not to dismiss the claims outright, those demands in Counts II and III should be dismissed.

**V.** **Conclusion**

For the foregoing reasons, Defendant BET respectfully requests that the Court dismiss Plaintiff's Amended Complaint. In addition, or in the alternative, Defendant requests dismissal of Plaintiff's demands for punitive damages contained in Counts II and III, together with whatever additional relief the Court deems just and proper.

              Respectfully submitted,

              GRAY ROBINSON, P.A.
              Attorneys for Defendant
              1221 Brickell Avenue, Suite 1600
              Miami, Florida 33131
              Karen.Stetson@gray-robinson.com
              Phone: (305) 416-6880
              Fax: (305) 416-6887

              By: /s/ Karen Stetson
              Karen Stetson
              Florida Bar No: 742937
              Jonathan L. Gaines
              Florida Bar. No. 330361

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via ECF to the parties in the attached Service List on this 12th day of November, 2013.

By:   /s/Karen L. Stetson

## SERVICE LIST

TRIPP SCOTT, P.A.
*Counsel for Plaintiff*
110 SE Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
Tel: 954.525.7500
Fax: 954.761.8475
Alexander D. Brown, Esq.
adb@trippscott.com
Peter G. Herman, Esq.
pgh@trippscott.com
Adam S. Goldman, Esq.
asg@trippscott.com