UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 13-61582-CIV-COHN-SELTZER

STACEY MATTOCKS, an individual,

    Plaintiff,
v.

BLACK ENTERTAINMENT
TELEVISION LLC, a District of Columbia
limited liability company,

    Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendant, BLACK ENTERTAINMENT TELEVISION LLC ("BET"), by and through undersigned counsel, and pursuant to Rule 12(b)(6), Fed. R. Civ. P., files this Reply in Support of its Motion to Dismiss Amended Complaint.

**I. Introduction**

Plaintiff contends there are "disputed facts" preventing the dismissal of the Amended Complaint, overlooking that the facts, as pled, must be accepted as true by the Court. Despite some inflammatory language and labels, the Amended Complaint shows that Plaintiff breached her license for the use of BET's intellectual property, and that BET acted to enforce and protect such intellectual property. Tacitly conceding the insufficiency of the Amended Complaint, Plaintiff improperly bases her Response upon myriad "facts" not alleged. *See e.g., G, Inc. v. AT&T Digital Life, Inc.,* No. 12–62080–CIV, 2013 WL 5005730 *4 (S.D. Fla. Sept. 12, 2013) (on a motion to dismiss "a court must limit its consideration to the pleadings and exhibits attached to the pleadings"). However, the Court's consideration must be limited to the

1221226

allegations in the Amended Complaint on considering a Motion to Dismiss, and the Amended Complaint should be dismissed.  Moreover, extraneous factual contentions in Plaintiff's opposition would not cure the deficiencies of the complaint, and the Amended Complaint should be dismissed with prejudice.

## II. Argument

### A.     Count I:  Plaintiff Fails to State a Claim for Tortious Interference

Plaintiff contends that whether a party was acting to protect its own financial interests is "normally" a jury question, requiring consideration of matters "outside the four corners of the complaint."  However, where, as here, the allegations of the complaint itself make clear that a defendant was seeking to protect its own financial interests, claims for tortious interference are dismissed for failure to state a claim.  *See, e.g. Swiss Watch Intern., Inc. v. Movado Group, Inc.*, No. 00-7703, 2001 WL 36270980 (S.D. Fla. June 21, 2001), dismissing claims for tortious interference pursuant to Rule 12(b)(6), stating:

> **Movado's actions, as detailed by the allegations in the Second Amended Complaint, are justified**. SWI acknowledges the existence of the grey market and that **it knew of Movado's intent to curb the unauthorized importation of Movado brand watches** from outside the United States. (Second Amended Compl. ¶ 9). Accordingly, **Movado's actions in furtherance of its own interests are nonactionable**. *See Williamson v. Sacred Heart Hosp. of Pensacola,* 1993 WL 543002, *51 (N.D. Fla. 1993); *Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1224–25 (Fla. 3d DCA 1980) ("So long as improper means are not employed, activities taken to safeguard or promote one's own financial and contractual interests are entirely non-actionable.").

Here, Plaintiff alleges she knew her license to use BET's intellectual property was terminated and that she was "directed to cease and desist from using all BET Material in any and all media immediately." Amended Complaint, ¶¶ 35, 36.  Plaintiff was aware, and the Amended Complaint shows, that BET's actions were taken with an intent to halt Plaintiff's unauthorized

2

use of BET's intellectual property, in furtherance of BET's own financial and property interests, and are non-actionable as "tortious interference."

Moreover, Plaintiff's contention that "it is enough for the interference to have been motivated by malice" in order to be actionable is incorrect. BET denies any malice or ill-will, but "[i]t is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the plaintiff." *Ethyl Corp. v. Balter,* 386 So. 2d 1220 (Fla. 3d DCA 1980), *rev. denied,* 392 So. 2d 1371 (Fla.), *cert. denied,* 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). Plaintiff misleadingly cites *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) in this regard. The court in *Alphamed* discussed whether malice was enough to show "intentional" interference where the defendant did not stand to gain a business benefit from the interference, and for that reason is inapposite to the facts alleged in this case. The relevant quote (only a fragment of which was included by Plaintiff at p. 3 of its Response) is:

> To be intentional, interference need not be motivated by the intent to secure a business advantage. It is enough for the interference to have been motivated by malice; it need not have been motivated by greed.

*Alphamed* did not disagree with *Ethyl Corp. v. Balter, supra,* that "interference" to protect one's own financial interest is non-actionable, even if accompanied by "malice." Similarly, Plaintiff cites *Heavener, Ogier Services, Inc. v. R. W. Florida Region, Inc.*, 418 So. 2d 1074, 1076 (Fla. App. 5th DCA 1982) for the proposition that whether interference is justified requires a balancing of interests, but neglects to mention that, immediately after the language included by Plaintiff, the *Heavener* court, citing *Ethyl Corp.,* states that "a defendant's right to protect his own established economic interest outweighs the plaintiff's right to be free of interference." *Id.*

3

Per the Plaintiff's Amended Complaint: Plaintiff's agreement with Facebook provided that her account would be disabled for the misuse of other's intellectual property; BET notified Plaintiff to cease using its intellectual property on the Facebook page; Plaintiff did not comply; BET contacted Facebook with regard to same and "within a few days," Facebook removed the Facebook page from its site. ¶¶ 35-38. Conspicuously absent is any allegation that Plaintiff was *not* using BET's intellectual property without permission after receipt of the cease and desist letter or that Plaintiff appealed the removal of the Facebook page to Facebook as she was permitted to do for content removed without cause. (Amended Complaint, Exhibit C) ("If we remove content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal."). The allegations show that BET's alleged actions were taken to protect its own financial interests and are non-actionable. Count I must therefore be dismissed.

### B.     Count II:  Plaintiff Fails to State a Claim for Breach of Contract

As Plaintiff does not dispute, the Amended Complaint does *not* allege that BET breached the only specific obligation it undertook with regard to the Facebook page: to not change the administrative rights such that Plaintiff would be unable to access her operating Facebook Page. Because she has not, and cannot, allege that BET breached the actual terms of the parties' agreement, Plaintiff asks the Court to overlook this obvious and simple fact and to focus instead on the "spirit" rather than the letter of the contract. However, the Court is not free to rewrite the parties' contract to add new provisions tailored to Plaintiff's claims. The removal by Facebook of the Facebook page due to Plaintiff's unauthorized use of BET's intellectual property cannot simply be shoehorned into a contractual breach by the artifice of what Plaintiff claims is the "spirit" of the contract. *See, e.g., Andersen Windows, Inc. v. Hochberg*, 997 So. 2d 1212, 1214

4

(Fla. 3d DCA 2008) ("Courts, without dispute, are not authorized to rewrite clear and unambiguous contracts," which "must be enforced as written.").

Plaintiff further concedes that she punitively reduced BET's access and ability to post content on the Facebook page to exert pressure on BET, purportedly to break an impasse in her employment negotiations with BET. Amended Complaint, ¶¶ 33, 61. This limitation on the ability to post content plainly violated the express terms of the contract under which BET was entitled to change any and all content in its "sole discretion."

Attempting to create an ambiguity where there is none, Plaintiff contends that "sole discretion" is ambiguous, and launches into irrelevant fact-laden argument of counsel, unconnected to any allegation of the Amended Complaint, purporting to describe how the updating of the Facebook Page operated prior to Plaintiff's reduction of BET's access and ability to change content. Not only is the description of how content was posted irrelevant to the current Motion,[1] "sole discretion" is an unambiguous term given its ordinary meaning by courts interpreting contracts. *See, e.g., Miami-Dade County v. Government Sup'rs Ass'n of Florida, OPEIU AFL-CIO*, 907 So. 2d 591 (Fla. 3d DCA 2005):

> **We find the issue raised to be one of simple contract interpretation** requiring no agency expertise. Thus, we decline to give PERC's interpretation of the CBA deference in this case. A plain reading of the CBA reflects that . . . employees **"[may] be assigned or transferred to work schedules at the sole discretion of the County**.". . .We find that PERC's **interpretation to the contrary is clearly erroneous and fails to give the employer here the benefit of its bargain**. Accordingly, we reverse the orders on appeal to the extent that they find that the County committed an unfair labor practice by changing the work schedules of the airport protocol officers.

---

[1] In fact, Plaintiff admits that the lowering of administrative rights only allowed BET to perform certain limited tasks (which did not include, most critically, the ability to post content on its own), but argues that BET could have exercised its contractual "sole discretion" through her instead. However, what BET specifically bargained for was unlimited access without having to rely on Plaintiff. The stipulation BET sought and received in exchange for the license granted to Plaintiff was the security of knowing that if BET wanted to change or post content itself, it could do so without Plaintiff's prior permission or involvement.

5

*See also, Sussex Financial Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 Fed. Appx. 709, 711-12 (9th Cir. 2011):

> Here, as the district court correctly concluded, there is **no facial ambiguity** in the credit agreement. . . . **[T]he plain language of these provisions afforded HVB "sole discretion"** to terminate the loans after one year, as it ultimately did. The district court correctly concluded that there was **no patent ambiguity in these terms and that the ambiguity exception did not apply.**

The Court should similarly reject the "ambiguity exception" in this case and give plain meaning to the parties' contract instead. Plaintiff fails to state a claim for breach of contract, and Count II must be dismissed.

### C. Count III: Plaintiff Fails to State a Claim for Breach of "Good Faith and Fair Dealing"

Again, Plaintiff is trying to have the Court rewrite the contract. The good faith and fair dealing claim must be dismissed because, as set forth above, there is no accompanying claim for the breach of an express term of the agreement. Good faith and fair dealing cannot be asserted as an "independent" breach. *See, e.g., Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996). Plaintiff fails to address that the provision she would have the Court insert is a substantive notice and cure provision for which the parties never bargained. While the duty of good faith can be applicable as a "gap filler" where a contract provides a party with discretion to do a particular act, (*i.e.,* the discretion must be exercised in a way that does not frustrate the reasonable commercial expectations)[2], here there is no gap filling role to be performed, merely the attempt to add completely new contract terms under the guise of "good faith and fair dealing."

---

[2] *See, e.g., Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 251 (Fla. 4th DCA 2009): "The purpose of the implied duty of good faith is to protect the parties' reasonable commercial expectations. . . . It is usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards."

By asking the Court to impose a cure provision into the contract where none exists, Plaintiff is effectively asking the Court for a "do-over" because she now regrets having breached the agreement by denying BET full access, which predictably led to BET's cease and desist letter, with which Plaintiff admits she did not comply, and which predictably led to the removal of the Facebook page. Plaintiff has not and cannot deny that her breach set all of these events into motion, and that she is the ultimate cause of the removal of the Facebook page. Instead she asks this Court to insert a "second chance" via a cure provision which is simply not contained in the parties' contract. "It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain." *Beach Resort Hotel Corp. v. Wieder,* 79 So. 2d 659, 663 (Fla. 1955). This is not a proper claim for the duty of good faith and fair dealing. Count III must, accordingly, be dismissed.

### D.   Count IV:  Plaintiff Fails to State a Claim for Conversion of "Likes" on Facebook

Plaintiff urges that her conversion claim presents an "an issue of first impression" for the Court, focusing irrelevantly on the fact that the "Likes" purportedly converted are "electronic data" which, Plaintiff insists, is capable of being converted because "a document stored on a hard drive has the same value as a paper document kept in a file cabinet." BET does not argue that electronic data cannot be converted, nor does it argue, as Plaintiff suggests, that the conversion claim fails merely because it "concerns somewhat more intangible property." The claim fails because the "Likes" are not personal property in which *Plaintiff* has a possessory interest. Plaintiff's Response begs the question and misses this point entirely. Plaintiff argues that a conversion claim does not *necessarily* fail where there is no demand and refusal for return of the property alleged, but consideration of whether there was a demand and refusal does not even

7

come into play unless plaintiff can prove that the property retained did in fact belong to plaintiff. See, e.g., *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157 (Fla. 3d DCA 1984) ("Thus, the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive **the person entitled to possession of the property**, which intent may be, but is not always, shown by demand and refusal."). In *In re U.S. Sugar Corp. Litigation*, 669 F. Supp. 2d 1301 (S.D. Fla. 2009), cited by Plaintiff, the Court dismissed a conversion claim, noting that while the failure to plead "demand" was not fatal to the claim, it was necessary to establish a right to possession of the property allegedly converted at the time of the conversion, and the plaintiff had failed to do so. *Id.* at 1329-30.[3] The lack of a demand in this case serves to bolster Plaintiff's lack of possessory interest in the "Likes." Plaintiff never demanded the return of the "Likes' because they were not hers to demand. *See also, e.g., Georgian v. The Zodiac Group, Inc., et al.*, No. 10-60037-JIC, DE 105, pp. 22-23 (S.D. Fla. Jan. 6, 2011) (conversion claim as to money dismissed because plaintiff's possessory rights in property allegedly converted not shown). Moreover, Plaintiff's contention that any demand to BET for return of the "Likes" would have been "futile" because the Facebook page was inaccessible again ignores that Plaintiff did not even appeal *to Facebook* the removal of the Facebook page as being mistaken or wrongful, as she was entitled to do. Plaintiff made no demand on BET or Facebook to rectify her purported grievance. There is nothing showing any intent by BET to deprive Plaintiff of any property to which she entitled.

Plaintiff's lack of possessory rights dooms the conversion claim, and this is not altered by Plaintiff's argument that intangible "goodwill of a business" can be subject to conversion.

---

[3] The property allegedly converted was the right to sell shares of U.S. Sugar, and the allegations did not show a possessory interest by plaintiff in such a right. *Id.* Similarly here, Plaintiff has no possessory interest in the "Likes."

Leaving aside that Plaintiff seeks to claim the goodwill associated with <u>BET's television series</u>, *The Game*, as her own personal property, Plaintiff urges an expansive application of *In re Estate of Corbin,* 391 So. 2d 731 (Fla. 3d DCA 1980) which held that, under the circumstances there, claims for the conversion of a business "properly extended" to a business' goodwill.  In *Corbin's Estate,* the decedent had operated a business.  His wife, the personal representative, wrongfully kept the business for herself instead of treating it as a probate asset, operated the business for a period of time, sold it to a third party, reacquired it when the buyer defaulted, then sold the business again.  *Id.*  The damages for the conversion were the value of the business, including goodwill.  *Id.* at 733.

In *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1144 (M.D. Fla. 2007), the court refused to expand the application of *Corbin's Estate* where defendant purportedly orchestrated the resignation of plaintiff's employees and plaintiff alleged conversion of the value of its business as a result:

> **Florida law does not recognize a claim for conversion of the value of a business under the instant circumstances. Courts have generally been hesitant to extend common law actions for conversion further than to claims for the misappropriation of a tangible chattel or the misappropriation of intangible rights *which are identified or merged in a document or other tangible chattel*.**

Here, the only allegations are that *Facebook* removed the Facebook page pursuant to policies to which Plaintiff agreed regarding the misuse of other's intellectual property, and the conversion claim relates only to the "Likes."  *Corbin* does not support a conversion claim for intangible goodwill under these circumstances.[4]   Plaintiff asks this Court to make new law and

---

[4] The other authorities cited by Plaintiff similarly involve the conversion of property in which the plaintiff has some ownership or possessory interest.  *See, e,g., Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731 (S.D. Fla. 2012) (interception of a particular satellite broadcast of a sporting event); *Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air*, 2012 WL 33150 (M.D. Fla. 2012) (diverted phone calls from customers);  *Portionpac Chemical Corp. v. Sanitech Systems, Inc.*, 17 F. Supp. 2d 1238 (M.D. Fla. 2002) (copyright infringement of a

9

hold that ephemeral third-party Facebook "Likes" (which can easily be removed by the "liking" third party) should rise to the level of legal rights having been granted to Plaintiff. Facebook "Likes," in the words of Chief Judge Fawcett of the Middle District, are neither "tangible chattel" or "intangible rights which are identified or merged in a document or other tangible chattel" like the sales agreements in *Corbin*. *Id.* Plaintiff fails to state a claim for conversion, and Count IV must be dismissed.

### E. The Prayers for Punitive Damages for Breach of Contract Should Be Dismissed

Plaintiff has not addressed in any fashion and apparently concedes that it is improper for the breach of contract and good faith and fair dealing counts to include prayers for punitive damages.

### III. Conclusion

For the foregoing reasons, and as set forth in BET's Motion, Defendant BET respectfully requests that the Court dismiss with prejudice Plaintiff's Amended Complaint. In addition, or in the alternative, Defendant requests dismissal of Plaintiff's demands for punitive damages contained in Counts II and III, together with whatever additional relief the Court deems just and proper.

Respectfully submitted,

GRAY ROBINSON, P.A.
Attorneys for Defendant
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Karen.Stetson@gray-robinson.com
Phone: (305) 416-6880
Fax: (305) 416-6887

---

computer program); *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720 (D. Del. 2011) (trademark infringement).

        By: /s/ Karen Stetson
        Karen Stetson
        Florida Bar No: 742937
        Jonathan L. Gaines
        Florida Bar. No. 330361

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via ECF to the parties in the attached Service List on this 20th day of December, 2013.

        By: /s/Karen L. Stetson

## SERVICE LIST

TRIPP SCOTT, P.A.
*Counsel for Plaintiff*
110 SE Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
Tel: 954.525.7500
Fax: 954.761.8475
Alexander D. Brown, Esq.
adb@trippscott.com
Peter G. Herman, Esq.
pgh@trippscott.com
Adam S. Goldman, Esq.
asg@trippscott.com