UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 13-61582-CIV-COHN-SELTZER

STACEY MATTOCKS, an individual,

    Plaintiff,

v.

BLACK ENTERTAINMENT
TELEVISION LLC, a District of Columbia
limited liability company,

    Defendant.
_____/

**DEFENDANT'S VERIFIED RESPONSE TO PLAINTIFF'S
AMENDED MOTION TO COMPEL PRODUCTION**

Defendant, BLACK ENTERTAINMENT TELEVISION LLC ("BET"), by and through undersigned counsel, files its Verified Response to Plaintiff's Amended Motion to Compel Production (DE 33), and states as follows:

**INTRODUCTION**

Plaintiff has filed a Second Amended Complaint, which sets forth claims for: tortious interference, breach of contract, good faith and fair dealing and conversion. All of Plaintiff's allegations center on the purportedly wrongful removal of a Facebook page (the "FB Page") focused on the BET television series *The Game* (the "Series") and the purported conversion of "Likes" from that page. The subject discovery requests were propounded when Plaintiff's First Amended Complaint was the operative pleading; however, all pertinent allegations have been re-asserted verbatim in Plaintiff's Second Amended Complaint.[1] Due to the filing of Plaintiff's

---

[1] The only addition to the Second Amended Complaint is an additional count for tortious interference of a Twitter account. However, all arguments made herein are unaffected by the new count and would apply with equal force had the same request been directed to the new count.

1308402

Second Amended Complaint, the Court denied as moot Defendant's Motion to Dismiss, which sought to dismiss all of Plaintiff's claims.  Defendant intends to renew its Motion to Dismiss as to all claims asserted in the Second Amended Complaint.

Plaintiff's Amended Motion to Compel seeks discovery of "the revenue received from *The Game*, including but not limited to, advertising revenue, from the beginning of time until the present" ("Confidential Information").  The requested documents are highly confidential and include proprietary and commercially sensitive information.  Plaintiff's claims all relate to the FB Page and not to the actual Series televised on BET.  Since BET did not earn any revenue from the FB Page, which would potentially be relevant to this litigation, Plaintiff now seeks discovery of advertising revenues earned by BET from the exhibition of the Series itself.  Such information is, simply put, not relevant to this case, even under broad discovery principles of Rule 26.  Moreover, since the information sought – the prices that BET charged to its television advertising customers – is extremely commercially and competitively sensitive, confidential information that BET vigilantly safeguards from public disclosure, Plaintiff bears the burden of establishing not only relevance, but also a need for the Confidential Information, *i.e.*, that she cannot present her case by less intrusive means.

This Court should deny Plaintiff's Amended Motion to Compel because under well-settled principles of law, Plaintiff can show neither relevance nor need to justify disclosure of BET's sensitive financial information.  In addition, or in the alternative, Plaintiff's Motion should be denied on the basis that the subject discovery request is overly broad as demonstrated herein.

## ARGUMENT

### A.   Plaintiff Cannot Show That The Confidential Information is Relevant and Necessary to the Case

Where, as here, a party seeks to discover information which is shown to be private and sensitive financial information, the disclosure of which may be harmful, the burden shifts to the party seeking such discovery to demonstrate both its relevance and necessity to the presentation of the case.  "When the party responding to [discovery] shows that the requested information is confidential and that its disclosure might be harmful, **the party seeking discovery must show that the information is not only relevant, but also necessary to its case**." *United Technologies Corp. v. Mazer,* No. 05-80980, 2007 WL 788877 *1 (S.D. Fla. March 14, 2007). Plaintiff **bears the burden of demonstrating *both* the relevance and the need** for such proprietary, confidential information.  *See, e.g., American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 742-43 (Fed. Cir. 1987) ("**Where proof of either relevance *or* need is not established, discovery is properly denied**.").

### 1.   The Revenue Information is Confidential

Defendant's internal financial information and private sales information is patently confidential information and is treated as confidential by BET.  BET takes numerous measures to keep the information confidential, including, but not limiting to, (i) restricting access to such confidential information to a limited number of BET's employees; (ii) training and requiring all BET employees with access to this information to strictly maintain the confidentiality of such information pursuant to Viacom's Global Business Practice Statement; and (iii) requiring outside compliance professionals (e.g., auditors) to execute a confidentiality agreement when BET is required to disclose the information as required by law.  BET takes these steps because its advertising revenue information is extremely commercially and competitively sensitive,

3

confidential information, the disclosure of which would be harmful to BET's business because it would not only give BET's competitors visibility into BET's business practice with respect to its primary source of revenue, but it would impact BET's relationship with its various advertisers. For example, if Advertiser A learned that Advertiser B was paying a lower rate, then Advertiser A could chose to stop doing business with BET if BET did not offer them a lower rate.  If competitor networks learned what rates BET was charging specific advertisers, then those networks would have a distinct advantage in stealing premium business away from BET.  *See, e.g., Sommer v. Aronow*, No. 95 Civ. 9230-LMM, 1996 WL 399820 *3 (S.D.N.Y. July 16, 1996):

> "[**T**]**he profits (or losses) of a business are generally of a confidential nature**." *Corbett v. Free Press Ass'n,* 50 F.R.D. 179, 180 (D.Vt.1970); *see also Gelb v. American Tel. & Tel. Co.,* 813 F.Supp. 1022, 1034–35 (S.D.N.Y. 1993) (**internal financial information is confidential**).

Plaintiff argues that she is entitled to the proprietary information because there is a confidentiality agreement in place. The Plaintiff's claim that an "attorneys eyes only designation" solves any and all problems misses the point.  The existence of a confidentiality order does not provide *carte blanc* to obtain whatever discovery comes to mind, regardless of its relevance to the case.  *See, e.g., Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525 (D. Del. 2002) ("A protective order which limits to whom information may be disclosed does not eliminate the requirement of relevance and need...," *citing American Standard,* 828 F.2d at 741); *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 3541933 *2, n.1 (N.D. Ill. Dec. 5, 2006) ("A protective order does not replace the requirement of relevance and need.").

### 2.	Plaintiff Cannot Meet Her Burden of Establishing Relevancy

#### a.	The Confidential Information is Not Relevant to the Allegations of Plaintiff's Complaint

Plaintiff fails to argue or establish that the proprietary information she seeks is related to any claim or defense in this case.  Courts have long held that the parameters of relevant discovery are defined by the claims which have been pled.  Rule 26(b) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Thus, while the Rules permit broad discovery of relevant matters, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).  *See, e.g., Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1353-54 (S.D. Fla. 2000) ("The scope of discovery, though, is not without limits.  Discovery of matter 'not reasonably calculated to lead to discovery of admissible evidence' is not within the scope of Rule 26(b)(1)."); *Piacenti v. General Motors Corp.,* 173 F.R.D. 221, 223 (N.D. Ill. 1997) ("The legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery" -- "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.").

This case relates to the purported wrongful removal of a Facebook page.  Indeed, Plaintiff alleges four claims related to the FB Page and one claim related to a Twitter account:

Count I, Tortious Interference:  "By directing Facebook to remove the FB Page under false pretenses, BET intentionally and unjustifiably interfered with the contract between Mattocks and Facebook."  Paragraph 56.

<u>Count II, Tortious Interference</u>:  "By directing Twitter to remove the Mattocks' Twitter account under false pretenses, BET intentionally and unjustifiably interfered with the contract between Mattocks and Twitter."  Paragraph 61.

<u>Count III, Breach of Contract</u>:  "By causing the removal of the FB Page, BET breached the letter agreement by excluding Mattocks from the FB Page."  Paragraph 70.

<u>Count IV, Good Faith and Fair Dealing</u>:  "By causing the removal of the FB Page without providing Mattocks notice or an opportunity to cure her alleged breaches, BET breached its duty of good faith and fair dealing to Mattocks."  Paragraph 80.

<u>Count V, Conversion</u>: "Upon information and belief, in late August 2012, BET instructed Facebook to take down the FB Page and take the "likes" from the FB Page and transfer them to BET's Facebook Page for the show."  Paragraph 86.

Plaintiff never alleges that she is entitled to any revenue generated by the Series and earned by BET.  Plaintiff never alleges she had any agreement with BET that related to the revenue generated by the Series and earned by BET.  For example, Mattocks does not allege that she created the Series or that she had any ownership or other financial interest in the Series, including a right to share in its profits as consideration for her work on the FB Page.  In fact, Plaintiff admitted that she was compensated on an hourly basis by BET for the work that she performed on the FB Page. Second Amended Complaint, ¶ 13.  As such, there is accordingly no reason that Plaintiff would need discovery related to the revenue generated by the Series in order to prove any of her claims.  Therefore, Plaintiff's request for Confidential Information should be denied.

### b.  The Confidential Information Is Not Relevant to Plaintiff's Damages

As Plaintiff is unable to point to any allegation of her Second Amended Complaint that would permit discovery of the Confidential Information requested, Plaintiff argues that it is relevant to her damages.  Plaintiff claims that the FB Page caused the success of the Series, and the revenue information received by BET will substantiate that claim.  Motion p. 3.  Plaintiff's focus on the revenue generated by the exhibition of the Series on BET is misplaced.  The issue of the financial success of the Series is not at issue in this case and, as such, does not necessitate the production of highly confidential and sensitive revenue information related to the Series.  Plaintiff's alleged damages are in no way related to the financial success of the Series.  To the extent Plaintiff expects the Series revenues to show a correlation between the FB Page and the Series' growth in popularity, BET has agreed to produce other information, including Nielsen ratings information, which would be sufficient to show, and indeed more effective at showing, the Series' popularity.[2]

The fact is all of Plaintiff's purported damages relate to the removal of the FB Page.  *See* Second Amended Complaint, pp. 7-8, entitled "Mattocks' Revenue Streams."  For example, according to Mattocks, she was receiving monies from various third parties, including Sulia, Google and Amazon, until the FB Page was allegedly removed.  Second Amended Complaint, ¶¶ 46 and 49.  Although the precise connection between these "revenue streams" and the FB Page is not altogether clear from her Second Amended Complaint,  Mattocks has alleged that when the FB Page was removed, the "revenue streams" earned by her stopped.  There is no allegation that any of Plaintiff's claimed lost "revenue streams" had any connection to the Series' revenues,

---

[2] Notably, BET maintains that Nielsen ratings information is irrelevant for various other reasons, and the Plaintiff would be unable to prove that her promotional efforts directly resulted in a specific Series' rating.

only the FB Page.  Therefore, even if the removal of the FB Page by Facebook was in any way wrongful, which BET denies, the resulting damages to Plaintiff would be in no way related to the revenue earned by the Series.

In similar situations, courts have disallowed discovery of sensitive financial information devoid of any relevance to the claims being made, as beyond the permissible scope of Rule 26.  For example, in *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309 (S.D. Ga. 2012), the Court denied the plaintiff handbag manufacturer's motion to compel production of defendant flea market operator's confidential financial information showing profits because plaintiff "fail[ed] to show how it could recover profits-based damages" so there was no relevance between the documents sought and the claims being made.  *See also, e.g., Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 623 (9th Cir. 1999) (discovery of confidential sales figures denied because not relevant to the damages potentially recoverable by plaintiff, which did not include a royalty based on sales); *Johnson v. Bad Boy Enterprises, LLC*, No. 5:09-CV-129, 2010 WL 2802493 (W.D. Ky. July 14, 2010) (discovery as to defendant's sales and profits denied as irrelevant to any claim in action over death from defective buggy); *U.S. for Use and Benefit of P.W. Berry Co., Inc. v. General Elec. Co.*, 158 F.R.D. 161 (D. Or. 1994) (protective order prohibiting discovery of plaintiff's financial information as not relevant to claim that defendant did not fully compensate plaintiff for work performed); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Okla. 2003) (motion to compel financial information denied where the information sought not relevant to claim seeking recovery for fire loss).

Plaintiff simply cannot meet her burden to show the information is relevant.  Additionally, BET sells the majority of its advertising up to a year in advance at its upfront presentations also known as the "upfront market" (i.e., pre-season) at locked-in rates to mitigate

the risk of paying more later during what is called the "scatter market" (i.e., during the season) if a series becomes popular. As such, BET negotiates and sells the vast majority of its advertising time long before the shows are broadcast to the public. Not only does BET sell the majority of its advertising a year in advance in the upfront market, it typically sells it on a run of schedule ("ROS") basis, as opposed to selling advertising for a specific show.[3] As a general matter, the vast majority of the total investment made by BET's advertisers is dedicated to ROS schedules and the minority of investment is made to purchase other categories of advertising, including advertising purchased for a specific show title. As a result, BET's potential revenue from advertisers is locked in regardless of whether a particular show, including the Series, was a hit.

Plaintiff's attempt to articulate a connection between her purported damages and Defendant's revenues, through the Declaration of Fernando Torres, fails as a matter of law. Mr. Torres, who is an economist, claims without citation to any legal authority[4] that the proper measure of damages in this case includes both what Plaintiff's claimed lost property was worth *to Plaintiff* <u>and</u> whatever value Plaintiff's claimed lost property may have had *to Defendant*. This "double-sided analysis," as Mr. Torres calls it, is actually a well-known damages analysis known as a "hypothetical negotiation," that is often used in patent infringement actions. Although it has also been used, to a lesser degree, in some other infringement actions (trademark and copyright), it has no applicability here where there has been no allegation that Defendant infringed any of Plaintiff's intellectual property rights. In fact the only allegation of

---

[3] ROS spots are defined as those that fall within a prescribed time range during the broadcast day, but are not guaranteed to run during any specific program or programs within that range.

[4] Mr. Torres' Declaration was filed two weeks after Defendant's Amended Motion to Compel and it was unaccompanied by any legal argument or explanation. Defendant does not, therefore, have the benefit of Plaintiff's legal position as to the applicability of this measure of damages to this case as of this writing.

1308402

infringement has been that *Plaintiff* infringed *Defendant's* intellectual property rights – not the other way around.[5]  See ¶ 36 of Second Amended Complaint.

The purpose of the "hypothetical negotiation" is to either substitute for disgorgement of profits (which, unlike in this case are awardable as damages by statute in infringement actions) or to calculate a "reasonable royalty," which again, in infringement actions, are the legal measure of damages. *See, e.g.,* 6 Patent Law Fundamentals § 20:59 (2d ed.) ("The Federal Circuit has affirmed that the hypothetical negotiation used to calculate a reasonable royalty seeks to determine the terms of the agreement that the parties would have reached at the time the infringement began.").  *See also*, *American Farm Bureau Federation v. Alabama Farmers Federation*, 935 F. Supp. 1533, 1550 (M.D. Ala. 1996) (adopting use of fictitious license between the parties *nunc pro tunc* to determine royalty in trademark action); *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) ("A reasonable royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant.").  Defendant is unaware of the "hypothetical negotiation" analysis being applied in any context outside of infringement actions where defendant's profits or a profit-based royalty are already permissible elements of an infringed plaintiff's damages.  None of Plaintiff's claims in this case allow for either disgorgement of Defendant's profits or the payment of a reasonable royalty by Defendant as a measure of damages.

Mr. Torres also states, citing to Black's Law Dictionary, that "fair market value is understood to be the price at which a willing seller and a willing buyer will trade."  Torres Declaration, ¶7.  However, Florida law is clear that fair market value is generally determined by

---

[5] Defendant would note that an earlier version of Plaintiff's Complaint alleged infringement of Plaintiff's copyrights but that count was voluntarily dismissed by Plaintiff.

one of three ways: the cost approach, the market approach based on comparable sales, and the income approach. *See, e.g, American Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (fair market value is determined by three well recognized guidelines, the cost approach, comparable sales or the income/economic approach); *Holly Ridge Ltd. Partnership v. Pritchett*, 936 So .2d 694, 697 (Fla. 5th DCA 2006) ("There are three traditional methods utilized to appraise property-cost, income and market."). Notably, none of the generally accepted methods of determining fair market value involves <u>the defendant's profits</u>.

Plaintiff has already indicated she intends to pursue lost income damages. See ¶¶ 42-49 of Second Amended Complaint. If, as Mr. Torres claims, there is no "active market for properties such as the one at issue in this case" then any "fair market value" analysis may be speculative, but that does not permit Plaintiff to simply superimpose damages applicable to federal statutory claims that allow for either disgorgement of profits or a reasonable royalty to her state law claims because it is more helpful to her cause. Moreover, Plaintiff is <u>not</u> merely attempting to evaluate what a "willing buyer" out in the marketplace would have paid for the Facebook Page, as Mr. Torres' declaration suggests. By asking for BET's revenues as the essential component to her valuation calculus, she has narrowed the field of potential buyers to only one – BET. In sum, Plaintiff has not and cannot establish the right to any profit-based damages in this case and, therefore, has not and cannot establish why revenues derived from the Series are discoverable.

### 3. Plaintiff Cannot Meet Her Burden of Establishing Need

In addition to failing to demonstrate relevance, Plaintiff also has failed to establish that there is a "need" for this information. Plaintiff claims to need BET's confidential revenue-related information to show the success of the Series. As discussed above, BET has already

provided Nielsen ratings information to the Plaintiff and is in the process of providing additional Nielsen information at Plaintiff's request. Therefore, to the extent that Plaintiff has a need to establish a correlation between the Series' success and the FB Page, which Defendant denies, Defendant has already provided Plaintiff with a less intrusive way to do so. *See, e.g., American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 742-43 (Fed. Cir. 1987) (even if confidential information was relevant, discovery should be denied where there is an alternative, less intrusive means available). In *American Standard*, the court denied plaintiff access to confidential sales and trade secret information where there was publicly available information that could serve Plaintiff's stated need. *Id. See also* Miller and Wright, Federal Practice and Procedure § 2043 (evaluation of necessity should include availability of other means of proof); *Hope for Families & Community Service, Inc. v. Warren*, 250 F.R.D. 653, 659 (M.D. Ala. 2008) (denying motion to compel production of sensitive financial information where "slight evidentiary utility" was outweighed by intrusive and potential harm).

Plaintiff has not and cannot establish the need for Defendant's proprietary revenue information, and her request should be denied.

### B.   Plaintiff's Request is Overbroad

Plaintiff's discovery request (even assuming, *arguendo*, the glaring lack of relevance and need can be overcome) is further objectionable as overbroad. Specifically, Plaintiff's request is unlimited in time, seeking financial information "from the beginning of time until the present" even though any relationship between Plaintiff and BET began in the fall of 2010 and ended in August, 2012 (see ¶¶ 11, 35 of Second Amended Complaint). *See, e.g., United Technologies Corp. v. Mazer*, No. 05-80980, 2007 WL 788877 *2 (S.D. Fla. March 14, 2007) ("It is difficult

for the Court to conceive of a more overbroad discovery request. The request is not even limited to a particular time period.").

Courts have frequently refused to allow such discovery that is unlimited in time where the relevant time period is plainly limited. *See, e.g., Weber v. Finker*, No. 07-27-J32, 2008 WL 1771822 *6 (M.D. Fla. April 15, 2008) (overly broad discovery request seeking documents from '2003 to the present' modified by court to period of 2004-2007 as that was period relevant to the case); *Kozlov v. Associated Wholesale Grocers, Inc.*, No. 10-03211, 2013 WL 1856470 *3 (D. Neb. May 2, 2013) (limiting overly broad 30(b)(6) designation as to relevant time period); *Lynch v. Air Transport*, No. 09-994, 2011 WL 1103837 *2 (E.D. Wis. March 23, 2011) ("Plaintiff's motion to compel will be also denied because his discovery request is overly broad both in time and in scope . . [seeking] materials from a four year period (2007 to present) however Plaintiff retired in April of 2008 and his grievance was withdrawn in February of 2009, making materials from at least 2009 to present wholly irrelevant."); *Stewart v. Mitchell Transport*, No. 01-2546, 2002 WL 1558210 *7 (D. Kan. July 11, 2002) (temporal scope of subpoena limited to one year period surrounding events at issue, rather 'to the present'). Given that Plaintiff's relationship with BET lasted less than two years and ended in August, 2012, Plaintiff's request for the irrelevant confidential information which includes both pre and post-relationship confidential information up to the present time should, in addition to the reasons previously mentioned, be denied as overly broad.

## **CONCLUSION**

Based upon the foregoing, Defendant respectfully requests that the Court deny Plaintiff's Amended Motion to Compel the discovery of Defendant's highly confidential and extremely sensitive financial information because such information is not relevant to any claim or defense

nor is such discovery necessary in order for Plaintiff to be able to present her case.  Defendant further requests that the Court deny Plaintiff's Amended Motion to Compel on the basis that the discovery at issue is overbroad.

        Respectfully submitted,

        GRAY ROBINSON, P.A.
        Attorneys for Defendant
        1221 Brickell Avenue, Suite 1600
        Miami, Florida 33131
        Karen.Stetson@gray-robinson.com
        Phone: (305) 416-6880
        Fax: (305) 416-6887

        By:  /s/ Karen Stetson
        Karen Stetson
        Florida Bar No: 742937
        Jonathan L. Gaines
        Florida Bar. No. 330361

CASE NO.  13-cv-61582-JIC

## **VERIFICATION**

I, Quinton Bowman, hereby declare as follows:

1. I am the Executive Vice President for Human Resources and Administration for Black Entertainment Television LLC and make this declaration based on personal knowledge.

2. I have reviewed the forgoing Defendant's Verified Response To Plaintiff's Amended Motion To Compel Production.

3. The factual statements contained therein concerning:  (a) the confidential nature of BET's revenue information; (b) the steps taken to maintain the confidentiality of BET's revenue information; (c) the potential harm to BET from the disclosure of such information; and (d) the methodology BET uses to sell advertising, are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of March, 2014 in Washington, D.C.

/s/ Quinton Bowman
Quinton Bowman

1308402

CASE NO.  13-cv-61582-JIC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via ECF to the parties in the attached Service List on this 20th day of March, 2014.

By: /s/Karen L. Stetson

## SERVICE LIST

TRIPP SCOTT, P.A.
*Counsel for Plaintiff*
110 SE Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
Tel: 954.525.7500
Fax: 954.761.8475
Alexander D. Brown, Esq.
adb@trippscott.com
Peter G. Herman, Esq.
pgh@trippscott.com
Adam S. Goldman, Esq.
asg@trippscott.com

1308402