UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 13-cv-61582-JIC

STACEY MATTOCKS, an individual

       Plaintiff,

v.

BLACK ENTERTAINMENT TELEVISION, LLC
a District of Columbia limited liability company,

       Defendant.
_____/

### PLAINTIFF'S REPLY TO DEFENDANT'S VERIFIED RESPONSE TO PLAINTIFF'S AMENDED MOTION TO COMPEL PRODUCTION

    Plaintiff, Stacey Mattocks ("Mattocks"), by and through undersigned counsel, files her Reply to Defendant's Verified Response to Plaintiff's Amended Motion to Compel Production, and states:

### Introduction

    In confusing the boundaries of what is discoverable under Federal Rule of Civil Procedure 26, Defendant seeks to impose a requirement upon Plaintiff not contemplated by the Federal Rules or applicable law that Plaintiff must show a "need" for the revenue information because it is purportedly confidential. It is clear to Plaintiff that Defendant is opposed to producing same not because it has a supportable legal basis for its opposition, but merely because it wishes to keep purportedly confidential revenue information out of the hands of Plaintiff, despite the standing Protective Order and that Plaintiff poses no competitive threat. As explained below, Defendant's arguments fail as a matter of law.

    Defendant also attempts to block Plaintiff's access to this discoverable information by arguing that it is not relevant, launching an inappropriate *Daubert* attack in response to

Plaintiff's expert, Fernando Torres', Declaration. However, under the discovery standard of Rule 26, the revenue information is clearly relevant and Defendant's attempt to discredit Mr. Torres' analysis also fails as a matter of law.

1. *Plaintiff Need Not Establish "Need" for the Revenue Information*

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Indeed, it is well established that "courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules." *Wrangen,* 593 F. Supp. 2d at 1278. As such, "discovery should ordinarily be allowed under the concept of relevancy **unless it is clear** that the information sought has **no possible bearing** on the claims and defenses of the parties or otherwise on the subject matter of the action." *Id.* (emphasis added).

Noticeably absent from Rule 26 is the requirement that the information sought be **necessary** to the requesting party's case. In fact, the only conditions placed upon the discovery of relevant information are listed under Rule 26(b)(2)(c) and have not been asserted by Defendant (because they do not apply).

Even so, Defendant argues that Plaintiff must show a need for the revenue information because it is confidential. In support, Defendant cites three inapposite cases: *United Technologies Corp. v. Mazer*, No. 05-80980, 2001 WL 788877, *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987), and *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 3541933 (N.D. Ill. Dec. 5, 2006). Critically, in all three cases, discovery was propounded upon a *non-party* and no confidentiality agreement or protective order

had been entered into between the party and non-party. Further, unlike *American Standard* and *Trading Technologies*, the discovery-seeking party in this case, Plaintiff, is not a competitor of the party opposing the discovery request, Defendant, and thus, there is no legitimate concern that confidential information will be disclosed to any of Defendant's competitors.

Defendant also relies upon *Hope for Families & Cmty. Serv., Inc. v. Warren*, 250 F.R.D. 653 (M.D. Ala. 2008), wherein the Defendant represents that the *Hope for Families* court denied the "motion to compel production of sensitive financial information where 'slight evidentiary utility' was outweighed by intrusive and potential harm." Response at 12. However, Defendant failed to advise this Court that that ruling was overruled in pertinent part by *Hope For Families & Cmty. Serv., Inc. v. Warren*, 3:06-CV-1113-WKW, 2009 WL 174970 (M.D. Ala. 2009), wherein the district court judge explicitly overruled the magistrate's denial of the motion to compel on the ground that the financial information **was relevant** and, to the extent it was confidential, was protected by the standing protective order. The court held:

> "First, to reiterate, relevant evidence is not confined to evidence admissible at trial, and here the court finds that disclosure of the financial information, as noted above to include annual gross receipts, annual gross profits and VictoryLand's payments to charities, is reasonably calculated to lead to the discovery of admissible evidence…"

> "Moreover, the court finds that Plaintiffs' need for VictoryLand's financial information, only a limited amount of which the court is directing VictoryLand to disclose, outweighs Mr. McGregor and VictoryLand's claim of privacy. This is particularly true since, as the Magistrate Judge recognized in other contexts in his opinion…the feared adverse impact of the disclosure of the information is subverted by the protective order… which prohibits the use of the information for anything other than "preparation and trial of this lawsuit" and proscribes its disclosure for any other purpose…; *CEH, Inc. v. FV "Seafarer,"* 153 F.R.D. 491, 499 (D.R.I.1994) ("While a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order."); *In re Heritage Bond Litig.,* No. CV 02–1475, 2004 WL 1970058, at *5

> n. 12 (C.D.Cal. July 23, 2004) ("Any privacy concerns ... defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter.")."

*Id.* at 8-10.

Thus, Defendant has failed to provide any legal authority for its proposition that Plaintiff show a "need" for the revenue information, especially in light of the standing Protective Order [DE 37] in this case. "Need" is simply not a legal requirement under the circumstances of this case. *See Rosenbaum v. Becker & Poliakoff, P.A.*, 08-CV-81004, 2010 WL 623699 (S.D. Fla. 2010) (ordering defendant to produce documents deemed highly sensitive and proprietary due to the presence of a confidentiality agreement); *Hope For Families, supra; Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 06-20976-CIV, 2007 WL 4557158 at *3 (S.D. Fla. 2007) (same); *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235 (S.D. Fla. 1985) (same).

Nevertheless, throughout its Response, Defendant consistently confuses the issues of need, relevance, and confidentiality. For example, Defendant states "Plaintiff argues that she is entitled to the proprietary information because there is a confidentiality agreement in place. The Plaintiff's claim that an 'attorneys eyes only designation' solves any and all problems misses the point. The existence of a confidentiality order does not provide *carte blanc* to obtain whatever discovery comes to mind, regardless of its relevance to the case." Defendant's Response at 4. From its argument, it appears Defendant acknowledges that the Confidentiality Agreement adequately protects the disclosure of any alleged confidential information, but simply argues that the reason it should not have to provide same is because it has no relevance to this case.

Therefore, having established that the only basis for which Defendant can prevent the disclosure of the revenue information is if it is not relevant or reasonably calculated to lead the discovery of admissible evidence, Plaintiff turns to Defendant's arguments that the revenue

information is not relevant.

   2. *The Revenue Information is Relevant*

As explained above, as a threshold matter, Plaintiff is entitled to the revenue information as long as it is relevant to any party's claim or defense, even if it is not admissible at trial, as long as it appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff submits that the revenue information would be the proper subject of discovery even under a significantly stricter standard, but given this liberal standard, the revenue information is unquestionably the proper subject of discovery.

Defendant argues that because Plaintiff has not asserted that she is entitled to revenue generated by The Game and earned by BET, discovery requests related to same are irrelevant. Defendant's argument misses the point and ignores Plaintiff's relevance arguments as stated in Plaintiff's Amended Motion to Compel [DE 33] and the Declaration of Fernando Torres [DE 38-1]. While Plaintiff will not burden the Court by repeating the arguments made in both documents, Plaintiff reiterates that because Plaintiff has asserted that she was largely responsible for Defendant bringing The Game back on the air and its continued success, she is entitled to see the revenue Defendant received as a result, in part, of her efforts. As the documents produced by Defendant show, the Facebook Page has a substantial impact on The Game's ratings, especially during The Game's first season on BET. An increase in ratings has a direct correlation to increased revenue for Defendant, in large part because Defendant could charge advertisers higher rates.

Additionally, Plaintiff's expert, Fernando Torres, an intellectual property economist with nearly thirty years of experience, provided greater detail on the need for this information when he declared that Defendant's revenue information is relevant and important for Plaintiff's

damage analysis in that it is important for the quantification of the fair market value of the property at issue; that is, Plaintiff's Facebook Page for The Game. Declaration of Fernando Torres [DE 38-1] at ¶6-8. Specifically, using generally accepted economic principles, one of the ways Mr. Torres will calculate the Facebook Page's fair market value is by evaluating and analyzing the impact on revenue from Defendant's incorporation the Facebook Page into the marketing and promotional strategy for The Game and BET. *Id.* at ¶8.[1]

Defendant also asserts that the revenue information is irrelevant because it sells its advertising on a run of schedule basis as opposed to selling advertising for a specific show, essentially arguing that Defendant does not have any way of determining what advertising revenue is derived from a particular show. This statement is hard to believe, considering Defendant unquestionably has metrics to keep track of the success of its shows, especially for purposes of analyzing the profitability of airing certain shows. It is unimaginable that Defendant, a Viacom, Inc. subsidiary, would have no idea how much revenue was generated from a particular show.

Moreover, as much as Defendant would like its conclusory and self-serving statement that "Plaintiff's alleged damages are in no way related to the financial success of the series" to be true, it is not. Mr. Torres has stated, under oath, that without the revenue information from Defendant, the fair market value of the Facebook Page cannot be determined. *Id*. Simply put, Defendant does not get to choose what is relevant and necessary for Mr. Torres' damage analysis.

   3. *Defendant's Daubert Attack*

Defendant's *Daubert* attack on Mr. Torres' Declaration is wholly inappropriate at this juncture. If, after Mr. Torres completes his analysis, Defendant believes that it is unsound, it may

---

[1] Of course, Plaintiff's expert, Fernando Torres, will expand upon his damages analysis in his forthcoming Report.

file a *Daubert* motion at the appropriate time. But until that point, Defendant may not argue that three concise paragraphs explaining the need for revenue information from Defendant constitute an analysis that "fails as a matter of law."

Nevertheless, Defendant's attacks are without merit. Defendant argues that Mr. Torres' "double-sided" analysis has no applicability where there has been no allegation that Defendant infringed any of Plaintiff's intellectual property rights. Defendant is simply incorrect. This double-sided analysis is also applicable to evaluate the fair market value of property on the date of conversion and that value is the result of a hypothetical negotiation between two willing and informed parties. *See Gillette v. Stapleton*, 336 So. 2d 1226, 1227 (Fla. 2d DCA 1976) ("it is well settled in Florida and other jurisdictions that the measure of damages in an action for conversion is the fair market value of the property at the time of the conversion plus legal interest to the date of the verdict."); *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (in the context of evaluating damage to an insureds home, "[d]efining fair market value as "the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied") (quoting *City of Tampa v. Colgan*, 163 So. 577, 582 (Fla. 1935)); *Ocean Elec. Co. v. Hughes Labs., Inc.*, 636 So. 2d 112, 114 (Fla. 3d DCA 1994) ("[i]n order to achieve the objective of restoring the plaintiff to a financially equal position had the damage not occurred, damages for loss of personal property are to be measured based upon the market value of the property on the date of the loss…[t]he market value of property or goods is determined by looking at the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser.") (citing *Jacksonville, T. & K.W. Ry. v. Peninsular Land, Transp. and Mfg. Co.,* 9 So. at 661; *State v. Book,* 523 So.2d

636, 638 (Fla. 3d DCA 1988), *rev. denied,* 534 So.2d 398 (Fla.1988); Charles T. McCormick, *Damages* § 44 (1935) (market value defined as sale by leisurely seller to willing buyer)).

Defendant also objects to Mr. Torres' definition of fair market value because it does not allegedly include other approaches, such as the "cost approach," "market approach," and "income approach." Defendant confuses the fair market value **standard of value** (i.e. the "what" to measure) with the valuation **methodology** (the "how" to measure). For example, in *American Reliance Insurance Company, supra,* the court accepted the definition of fair market value advanced by Mr. Torres and explained "[a]ll of this is well and good, of course, but in order to translate words into dollar amounts there must be a mathematical formulae to consider, and, of course, there are. These are the three well recognized guides to appraisal: (1) the cost approach; (2) the comparable sales and (3) the income or economic approach." In other words, the fair market value of the intangible property in this case will be measured by using one of those three approaches. Therefore, it is not incongruent (as Defendant suggests) for Mr. Torres to analyze the fair market value using one (or more) of the three approaches.

Defendant also asserts that none of these methods involve analyzing Defendant's profits, but mistakes the term "profits" ("the excess of revenues over expenditures in a business transaction" *see,* Black's Law Dictionary (9th ed. 2009)) from the requested "revenue," ("[g]ross income," *see* Black's Law Dictionary (9th ed. 2009)) which is part of the income/economic approach. The income/economic approach essentially values property based on how much money can be derived from that property. Therefore, Plaintiff can determine the value of the property (i.e. the Facebook Page), in part, based on how much revenue Defendant could derive from it. One way of measuring this value is by examining the revenue Defendant received from

The Game, which would be the measure Defendant used in determining how much it was willing to spend on promoting The Game. The Nielsen ratings, which show only one side of the valuation equation, are simply inadequate for the purposes of conducting this damages analysis.

Bottom line, Plaintiff has chosen to go through these great lengths to acquire the revenue information because it is important to her damages calculation and is requested by Mr. Torres.

4. *Plaintiff's Request is of Proper Scope*

Defendant argues that Plaintiff's request is overbroad because it requests revenue information "from the beginning of time until the present." Considering Plaintiff created the Facebook Page before Defendant's involvement with The Game, Plaintiff is entitled to all revenue generated from The Game from the moment Defendant earned revenue from same.

Plaintiff requests revenue documents "from the beginning of time" because she does not know when Defendant began receiving revenue from The Game. Essentially, this Request seeks revenue information from the first instance in which Defendant earned revenue from The Game, since Defendant began airing episodes of The Game in 2010. Indeed, whenever that occurred, it is indisputable that Plaintiff had already had an impact on Defendant's ability to earn revenue from The Game. Before Defendant had any involvement with The Game, Plaintiff had already amassed a significant following on her Facebook Page for The Game, which played an integral role in Defendant electing to pick up The Game and return it to the air. Plaintiff's impact was also evidenced by the success of The Game with viewers, especially early on, due to the built-in audience Plaintiff had created before The Game even aired on BET. Therefore, Plaintiff is entitled to see the revenue generated by Defendant for The Game from the moment Defendant first earned revenue from same.

Regarding the end date for the requested information, in an effort to compromise,

Plaintiff will agree that Defendant need not produce any revenue information that was generated after December 31, 2012. However, Plaintiff submits that she is entitled to any revenue generated, even if not received, prior to January 1, 2014. Additionally, because Defendant states that it sells the majority of its advertising a year in advance, Plaintiff should be entitled to the advertising revenue generated in 2013, since this revenue would reflect The Game's performance in 2012, when Plaintiff was still in control of her Facebook Page.

WHEREFORE, Plaintiff respectfully requests this Court enter an Order compelling Defendant to produce documents responsive to Request 7 of Plaintiff's Second Requests for Production forthwith, awarding fees and costs incurred in the pursuit of this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A), and such other and further relief as it deems just and proper.

    Respectfully Submitted,

    TRIPP SCOTT, P.A.
    *Counsel for Plaintiff*
    110 SE Sixth Street, 15th Floor
    Ft. Lauderdale, Florida 33301
    Tel: 954.525.7500
    Fax: 954.761.8475

    By:  */s/ Peter G. Herman*
    Peter G. Herman, Esq.
    Fla. Bar. No. 353991
    pgh@trippscott.com
    Alexander D. Brown, Esq.
    Fla. Bar No. 752665
    adb@trippscott.com
    Adam S. Goldman, Esq.
    Fla. Bar No. 86761
    asg@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via EC/CMF this 31st day of March, 2014, to the attorneys on the below Service List.

By: */s/ Peter G. Herman*
Peter G. Herman, Esq.
Fla. Bar. No. 353991
pgh@trippscott.com

## SERVICE LIST

Karen L. Stetson, Esq.
Gray Robinson, P.A.
1221 Brickell Avenue Suite 1600
Miami, FL 33131
Karen.Stetson@gray-robinson.com
*Counsel for Defendant*