**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 13-61582-CIV-COHN-SELTZER**

STACEY MATTOCKS, an individual

        Plaintiff,

v.

BLACK ENTERTAINMENT TELEVISION, LLC
a District of Columbia limited liability company,

        Defendant.

_____/

## PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT TESTIMONY AND OPINIONS OF DEFENDANT'S EXPERT GUY HAGEN

Plaintiff, Stacey Mattocks, pursuant to Federal Rule of Civil Procedure 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), respectfully moves to exclude or limit the testimony and opinions of Defendant Black Entertainment Television's proffered expert, Guy Hagen, and states:

### Introduction

Defendant, Black Entertainment Television ("BET"), has proffered the "expert" testimony of Guy Hagen ("Hagen") for the purposes of providing his opinion as to whether the actions taken by Facebook and BET, which resulted in Plaintiff's Facebook Page for the television show, The Game, being removed from Facebook and the associated "Likes" being "migrated" to BET's Facebook Page for The Game, were consistent with Facebook's practices and Statement of Rights and Responsibilities ("SRR").

Hagen's testimony should be excluded as his opinions fall well short of the standards set by *Daubert* and its progeny because: (1) he is unqualified to testify as to Facebook's SRR; (2) his opinions are unreliable as a result of (a) his failures to connect any alleged methodologies

used to his opinions, (b) his reliance upon hearsay opinions, and (c) the fact that his opinions

have been developed solely for the purposes of litigation; (3) his opinions are irrelevant; and (4)

his opinions would not assist the trier of fact because the issues upon which Hagen opines do not

require "expert" clarification. Lastly, any probative value Hagen's testimony may have (which is

expressly denied) is greatly outweighed by the unfair prejudice to Plaintiff that would result from

its admission.   Accordingly, Hagen's testimony is inadmissible and this Court should prohibit

Defendant from introducing his testimony to the jury in any form.

### I.  Legal Standard

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence

702, which provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.

*Id.*

In assessing an expert's sources, methodology, and conclusions, *Daubert* requires the

trial court to act as a "gatekeeper" to insure that speculative and unreliable opinions do not reach

the jury. *Daubert,* 509 U.S. at 597. As the gatekeeper, the court must "make certain that an

expert, whether basing testimony upon professional studies or personal experience, employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). In doing so, the

Eleventh Circuit has stressed that the trial court's "gatekeeping" duty requires a "rigorous three-

part inquiry" into whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).   The party offering the expert maintains the burden of laying the proper foundation for the admission of the expert testimony.   *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).   The admissibility of such testimony must be established by a preponderance of the evidence. *Id.; see also Bourjaily v. United States,* 483 U.S. 171, (1987).

As will be demonstrated below, Hagen's testimony fails to meet the *Daubert* standard and therefore, must be excluded from jury consideration.

**II.   Hagen's Testimony Should Be Excluded Because He is Not Qualified to Render His Opinions**

Determining whether a witness is qualified "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012). Stated differently, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address. *Id.* A court may exclude an expert's testimony if the expert is testifying to an area related to but outside his expertise. *Kipperman v. Onex Corp.*, 411 B.R. 805, 843 (N.D. Ga. 2009) (emphasis added). Indeed, an expert who testifies outside his area of expertise "ought not to be anointed…a court-approved expert witness for what is essentially a

lay opinion." *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002).

Based on the foregoing, when the requisite scrutiny is applied, Hagen's lack of qualifications to testify regarding the issues *sub judice* is evident and should result in his exclusion. For example, in his Report, Hagen states that he was tasked with reviewing the history of actions by Facebook and BET in relation to the current litigation and observing whether those actions were consistent with Facebook's practice and SRR. *See* [Hagen Rpt. at 1, attached as Exhibit A]. However, in arriving at his conclusions, Hagen has done little more than review Facebook's SRR and opine as to the meaning of its provisions. Yet, nothing in Hagen's qualifications make him an expert on the interpretation of contractual provisions or terms of service that he had no part in drafting. In fact, the interpretation of the SRR (i.e., a legal contract) is purely a legal issue that Hagen himself admits he is unqualified to perform. *See* Hagen Deposition, attached as Exhibit B, at 135:23-136:4; 151:10-11 ("I'm not qualified to offer a legal opinion"); *see also United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law."); *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 5:07-CV-501-OC-10GRJ, 2009 WL 1754058 (M.D. Fla. 2009) (expert testimony that expresses a legal conclusion is inadmissible and the interpretation of a written contract generally is a matter of law to be determined by the court); *Schneberger v. Schneberger*, 979 So. 2d 981, 982-83 (Fla. 4th DCA 2008) (contract interpretation is an issue of law).

When asked during deposition whether he was an expert on Facebook's terms and conditions, Hagen explained, "I've reviewed the Facebook terms and conditions in regards to this and I believe you can offer expert testimony regarding this situation." [Hagen Dep. at 165:2-24]. Thus, it appears that Hagen considers himself an expert on Facebook's SRR simply because

he reviewed them and presumably, because he has general experience with Facebook in the past.

Moreover, despite Hagen's "Expert Opinions" that discuss "ownership" of property on Facebook.com (a topic discussed in great detail in Section III below), Hagen candidly admitted that he is not qualified to render any opinions as to legal ownership – the only type of ownership relevant to this case- of anything on Facebook.com:

> Q: In one of your categories you will have a paragraph that talks about who owns Facebook and then the next paragraph says, "Facebook effectively owns the user profiles and accounts". It says, "Facebook definitely owns all mined information about users and fans". Those three paragraphs, are you offering a legal opinion?
>
> A: No, I'm not qualified to offer a legal opinion.
>
> Q: So ownership is part of a legal opinion, isn't it?
>
> A: I would say it is.

[Hagen Dep. at 151:3-14].

*   *   *

> Q: Again, you are not opining on the true ownership in this case of Facebook page or anything connected with that?
>
> A: No.

[Hagen Dep. at 152:12-15].

Finally, despite Hagen's claims that his opinions are based on his "professional experience" and "published cases," as detailed below, when pressed during deposition, it became clear that none of his experiences have provided him any expertise concerning the issues *sub judice*. For example, in his Report, Hagen claims that one of his experiences concerned "[g]aining Facebook page administrative control, regarding a business page controlled solely by an officer undergoing criminal prosecution." [Hagen Rpt. at 4]. During his deposition, Hagen described this experience as having provided the following assistance: "work with their IT department, gain credentials to access the individual's e-mail account, and try to access that

Facebook page…" [Hagen Dep. at 109:22-111:12]. This experience of *gaining access to an officer's email account* is a far cry from the issues in this case. By way of further example, in his Report, Hagen claims that he had an experience "[g]aining administrative control of inactive Facebook and Twitter accounts based on trademark and copyright registration of a new company." [Hagen Rpt. at 4]. During deposition, however, Hagen explained that this experience was nothing more than "working with" Facebook and Twitter to gain control over these *inactive* accounts. [Hagen Dep. at 111:20-112:17]. Again, this experience acquiring *inactive accounts* does not bear on any issue in this case. Lastly, Hagen wrote in his Report that he has experience "[m]erging or deleting spurious business pages created by employees, fans, or automated Facebook policies." [Hagen Rpt. at 4]. However, during deposition, when asked about this experience, Hagen admitted he did nothing more than contact Facebook to request that the pages be removed or merged, or instruct the client to do the same. [Hagen Dep. at 112:21-7].

These experiences show that Hagen, at best, only has general familiarity with the process of gaining control over Facebook pages. Nevertheless, such experiences do not provide Hagen with the requisite experience that would qualify him as an expert to opine as the meaning of Facebook's SRR, or whether Facebook and Defendant's actions were consistent with same. As the court in *White, supra,* cautioned, Hagen, as a lay person, should not be anointed as a court-approved expert for testifying as to a lay opinion. Accordingly, Plaintiff requests that this Court find Hagen unqualified to testify as an expert witness, and exclude his testimony from presentation at trial.

### III.   Hagen's Opinions Are Unreliable and Irrelevant

As previously noted, district courts perform an important "gatekeeping" role to ensure that an expert's testimony is both reliable and relevant. *Daubert*, 509 U.S. at 597; *Kumho Tire*

*Co.*, 526 U.S. at 141. As to *Daubert*'s "reliability" prong, the court as gatekeeper must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. The "reliability criterion remains a discrete, independent, and important requirement for admissibility." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Under *Daubert's* second "relevancy" prong, proposed expert testimony also must be an appropriate "fit" with respect to the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).[1] The "standard for 'fit' is higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

Distilled to their core, Hagen's opinions are little more than *ipse dixit* statements coupled with opinions provided by three of Hagen's colleagues, all cloaked as "expert testimony." This type of testimony, which is offered solely for the purposes of litigation, is not reliable and should be excluded. Hagen's testimony should also be excluded on the basis that many of his opinions are simply irrelevant to the issues *sub judice*.

### a.   *Hagen's Ipse Dixit Opinions are Inherently Unreliable and Must Be Excluded*

Federal courts have resoundingly rejected as unreliable expert opinions that are connected to or extrapolated from existing data only by the *ipse dixit* of the expert. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *United States v. Frazier*, 387 F.3d 1244, 1275, n.10 (11th Cir. 2004) (noting that expert testimony relying on data connected by the *ipse dixit* of the

---

[1] The other part of the relevancy analysis – whether the testimony will assist the trier of fact in understanding the evidence – is addressed below in Section IV.

expert may create "analytical distance between the particular opinion offered and the data, principles, and methods from which it is purportedly derived").

Hagen's opinions are exactly the type routinely precluded by federal courts. Aside from citing two articles from the *Wall Street Journal* and *Buzzfeed.com* regarding Facebook's ability to "mine" data from Facebook users' accounts (which is irrelevant to the issues *sub judice*), none of Hagen's opinions have any connection to any verifiable support. In lieu thereof, Hagen simply regurgitates Facebook's SRR and asserts that his interpretation should be accepted by this Court. Illustrative of this flawed approach, Hagen makes the following "Expert Observations" under the heading, "*Who Owns Facebook Fans?,*" that are unreliable, irrelevant, or both:

"*Facebook has license to, but does not own, all content:*"[2] Hagen's explanation fails to provide any verifiable support for his conclusion that Facebook has "license and rights to all fan content, indeed all content whatsoever." *Id.* at 7. Aside from lack of relevancy, whether a party has a license or full ownership of property is a legal issue that Hagen is self-admittedly incapable of determining. In any event, simply reading portions of Facebook's SRR and opining as to their meaning is not a reliable methodology because there is no verifiable support for the resulting opinions. Thus, this *ipse dixit* opinion is unreliable and should be excluded. Moreover, this opinion is irrelevant to the issues *sub judice* and as such, should be excluded as irrelevant.

"*Facebook effectively owns the User profiles, and accounts:*"[3] In conclusory fashion, Hagen states "[b]y extension [of the above opinion], Facebook owns all accounts and profile information," and then simply recites a paragraph from Facebook's SRR, which says nothing about *ownership* of accounts or profile information. Essentially, Hagen concludes (illogically) that because Facebook owns its platform and technology and has a license to content on its

---

[2] Hagen Rpt. at 7.
[3] *Id.*

network, it necessarily *owns* all accounts and profile information. However, the paragraph cited from Facebook's SRR expressly contradicts Hagen's statement regarding ownership because it provides that Facebook has been *granted permission by the user* to use his/her account and profile information. If, in fact, Facebook owned the profiles and accounts, it would not need permission from account holders to use same. Indeed, Facebook's SRR actually provides that the account holder owns all content posted on Facebook: "You own all of the content and information you post on Facebook and you can control how it is shared through your privacy and application settings." [Facebook's SRR at ¶ 2, attached as Exhibit C].

Hagen's intentional, but careless, *ipse dixit* use of the term "own" is highly misleading, an improper legal conclusion, and contrary to the plain terms of Facebook's SRR. Thus, Hagen's opinion should be excluded as unreliable. In any event, Hagen's opinions regarding ownership of user profiles and accounts are irrelevant to the issues *sub judice* and as such, should be excluded.

"*Facebook definitely owns all mined information about Users and fans*:"[4] While Plaintiff does not deny that Facebook does in fact "mine" information about Facebook users and sells that information to advertisers, such actions do not mean, *ipso facto*, that Facebook "owns" that information. Once again, Hagen's intentional, but careless, *ipse dixit* use of the term "own" is highly misleading and an improper legal conclusion. And, simply reading portions of Facebook's SRR and opining as to the meaning of its provisions is not a reliable methodology because there is no verifiable support for the resulting opinions. Moreover, Hagen's opinions regarding ownership of "mined" information is irrelevant to the issues *sub judice*.  As such, Hagen's opinion should be excluded as unreliable and irrelevant.

---

[4] Hagen Rpt. at 8.

"*Facebook supports the original intellectual property of Users and business*:"[5] Again, simply reading portions of Facebook's SRR and opining in *ipse dixit* fashion as to the meaning of its provisions is not a reliable methodology because there is no verifiable support for the resulting opinions. Further, Hagen's opinions regarding how Facebook handles intellectual property infringement is irrelevant to the issues *sub judice*. Facebook is not a defendant in this case, and whether its actions were proper is not for consideration. Rather, the misleading way about which Defendant's instructed Facebook to remove Plaintiff's Facebook Page and to "migrate" the Likes is important, but explicitly ignored by Hagen. *See* [Hagen Dep. at 135:10-13 ("I assume that there was no misrepresentation to Facebook regarding the status of the individuals regarding The Game, the ownership and the intellectual property.")]. Therefore, Hagen's testimony is unreliable and irrelevant, and should be excluded.

"*The brands own the fans*:"[6] Hagen's opinion that "brands own the fans" is based entirely on Facebook's SRR concerning Facebook's ability to "merge" duplicative Facebook pages, which does not contemplate the relationship between brands or page administrators and fans. Plaintiff does not dispute that Facebook has the capability to merge Facebook pages. However, Hagen admittedly did not consider the misleading way about which Defendant instructed Facebook to remove Plaintiff's Facebook Page and to "migrate" the Likes. *See* [Hagen Dep. at 135:10-13]. Again, merely reading portions of Facebook's SRR and opining in *ipse dixit* fashion as to the meaning of its provisions is not a reliable methodology because there is no verifiable support for the resulting opinions. Moreover, and once again, Hagen's intentional, but careless, *ipse dixit* use of the term "own" is highly misleading and an improper legal conclusion. Therefore, Hagen's testimony should be excluded on these bases alone.

---

[5] *Id.*

[6] *Id.* at 9.

Examining Hagen's opinion further, additional grounds for exclusion emerge. After reciting Facebook's SRR, Hagen states that "brand representatives" may request that duplicate or violating pages be deleted or merged as long as fans are not misled or confused. On this proposition, Hagen posits:

> "it is Facebook's practice to acknowledge that the relationship is between the fan and the brand, and not between fans and the specific Facebook page; and by extension, that brands may make claims on the fans of pages based upon their brands so long as those pages are not clearly represented as "unofficial".

[Hagen Rpt. at 9]. Hagen's conclusion completely ignores the facts *sub judice*; that is, that the Facebook page at issue was a fan page operated by a fan, and was done so with Defendant's permission and encouragement. Hagen omits the fact *that any Facebook page administrator* may request that duplicative or violating pages be deleted or merged as long as fans are not misled or confused. By stating only that "brand representatives" can do so, Hagen ignores the relationship between the creator of a fan page and the fans, and merely concludes that Facebook's practice is to acknowledge that the relationship is between the fan and the brand as opposed to the fans and the page. These opinions should be excluded as unreliable.

"*I am not aware of any precedent for an individual retaining ownership/administration of a Facebook page by removing all references to the brand or its intellectual property*:"[7] Having failed to conduct any comprehensive investigation into whether this situation has ever occurred, [Hagen Dep. at 165:25-166:25 ("I did not do a globally comprehensive search")], this opinion is clearly unreliable. Moreover, Hagen opines that "US intellectual property law has applied to Internet and social media assets even retroactively (prior to litigation)," but he is unqualified to render this legal conclusion, which is confusing and lacks any verifiable support. As such, his

---

[7] *Id.* at 10.

opinion should be excluded as unreliable.

"*Stripping a brand from a page to retain its followers would probably violate Facebook terms*:"[8] Hagen's sheer speculative opinion, which is unquestionably a legal conclusion, is based solely on reading Facebook's SRR and not upon any verifiable support. Once again, simply reading portions of Facebook's SRR and opining as to the meaning of its provisions is not a reliable methodology because there is no verifiable support for the resulting opinions. Indeed, after reciting Facebook's SRR, Hagen states, "**I believe** that fans of The Game **would probably be** confused and misled if they were to be converted to a page not connected to 'The Game' or 'Black Entertainment Television." [Hagen Rpt. at 10] (emphasis added). This is precisely the type of *ipse dixit* opinion that courts must exclude from jury consideration. *See, e.g., Frazier*, 387 F.3d at 1275, n.10. Moreover, as the situation described by Hagen did not occur in the case *sub judice*, this opinion is irrelevant and must be excluded.

"*Summary of Opinions:*"[9] Hagen summarizes his opinions by concluding that Facebook and Defendant's actions were consistent with standard Facebook policy and that Defendant should have expected to have the right to merge the fans of "The Game." However, because all of his underlying opinions are either unreliable, irrelevant, or both, his ultimate conclusion is fatally flawed. Under these circumstances, the entirety of Hagen's testimony should be excluded.

**b. *Hagen's Reliance Upon Third Party Opinions is Unreliable***

In addition to reciting Facebook's SRR, Hagen also asserts that he spoke with "three colleagues with senior manager or partner-level responsibilities at national digital and public relations agencies and who have considerable experience with social media and Internet asset

---

[8] *Id.*

[9] *Id.* at 11.

management across a broad spectrum of high-level engagement."[10] Gaudy verbiage aside, while Hagen may rightfully rely on the opinions of others in developing his own opinions, the testimony resulting from these alleged conversations is clearly hearsay and unreliable for the reasons set forth below.

While Federal Rule of Evidence 703 affords expert witnesses some leeway with respect to relying on hearsay evidence to support their opinions, such hearsay testimony is only permitted "if it is based upon the type of evidence reasonably relied upon by experts in the particular field." *United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002). The purpose of this requirement is to limit or avoid reliability concerns. *See, e.g.*, *United States v. Batchelor-Robjohns*, 95 A.F.T.R.2d 2005-3001 (S.D. Fla. 2005) ("an expert may not blindly rely on the conclusions of another and still meet the reliability requirements of Rule 702 and *Daubert*"); *accord Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1108 (S.D. Ind. 2003) ("Although a testifying expert may rely on another expert's opinion, the testifying expert's opinion should be rejected if the underlying basis is unreliable."). However, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co.,* 526 U.S. at 149 (quoting *Daubert,* 509 U.S. at 592). Further, although an expert may rely on inadmissible hearsay, the expert must nonetheless apply his or her own extensive experience and reliable methodology to the inadmissible materials. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). For example, an expert may not simply regurgitate other experts' opinions, especially without verifying or testing those facts, data, or opinions. *See, e.g. Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d

---

[10] *Id.* at 5.

1357, 1364 (S.D. Fla. 2009).

While Hagen's Report is silent as to the impact his interviews had in arriving at his conclusions, Hagen testified that these individuals stated that they expected that Facebook would have reacted in accordance with its SRR. [Hagen Dep. at 116:24-117:13]. However, it does not appear that any of the three colleagues have any experience with the issues *sub* judice. As to one his colleagues, Hagen admitted that the individual "did not have any specific Facebook merger intellectual property situations." [Hagen Dep. at 116:15-23]. As to another, Hagen stated that the individual has an "analogous" experience, but admitted the experience involved a (clearly distinguishable) "friendly merger." [Hagen Dep. at 118:11-119:2]. Hagen did not provide any information as whether the third colleague had any relevant experience.

Moreover, interviewing three people who do not profess to be experts in Facebook or social media law, and who have virtually no apparent experience concerning any issues *sub judice*, is not the type of evidence reasonably relied upon by social media experts in forming opinions. At a minimum, if Hagen sought to include hearsay evidence as part of his testimony, he should have sought out individuals with experience relevant to this case. However, whether it is because he allegedly had less than a week to prepare his report, [Hagen Dep. at 4:17-19; 11:21-12:12], or otherwise, Hagen is not excused from going to the lengths expected and required of a testifying expert. Under these circumstances, Hagen's testimony should be rejected.

### c.   *Hagen's Opinions are Offered Solely For Purposes of Litigation and Should be Excluded*

A "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert*, 43 F.3d 1311, 1317 (9th Cir. 1995). *See also* Fed.R.Evid. 702, 2000 amend.

note.; *Sumner v. Biomet, Inc.*, 434 Fed. Appx. 834, 842-43 (11th Cir. 2011) (holding expert opinion arrived at solely for purposes of litigation weighed heavily against its admissibility). This is because experts whose "findings flow from existing research are less likely to have been biased toward a particular conclusion by the promise of remuneration; when an expert prepares reports and findings before being hired as a witness, that record will limit the degree to which he can tailor his testimony to serve a party's interests." *Daubert*, 43 F.3d 1311, 1317 (9th Cir. 1995).

Hagen's testimony lacks reliability because it was developed solely for the purposes of this litigation. Indeed, as Hagen has not indicated otherwise, his theories about Facebook's SRR and "ownership" of property on Facebook.com were developed to match Defendant's theory in this case and were not the product of independent research. As demonstrated above, Hagen has never engaged in the type of research required to qualify as an expert in this case. Thus, Hagen's research methodologies do not reflect the level of intellectual rigor required by *Daubert* and its progeny. Consequently, his testimony is unreliable and should be excluded.

### IV. Hagen's Testimony Should Be Excluded Because it is Not Helpful to the Trier of Fact

The final prong of the Eleventh Circuit's "rigorous three-part inquiry" is to ensure that the "testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260. Stated differently, expert testimony is "admissible if it concerns matters that are beyond the understanding of the average lay person." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1332 (S.D. Fla. 2013) (citation omitted). It is well-settled that the Eleventh Circuit "follows the generally accepted rule that expert testimony should be excluded where 'it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.'" *Abramson v. Walt Disney World Co.*, 370 F. Supp. 2d 1221,

1225 (M.D. Fla. 2005) (citing *Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995).

   *Hartford Ins. Co. v. BellSouth Telecommunications, Inc.*, 04-20532-CIV, 2005 WL 6111633 (S.D. Fla. 2005) aff'd, 206 Fed. Appx. 952 (11th Cir. 2006) is particularly instructive regarding the fallacies of Hagen's testimony. There, the plaintiff-insurer sued the defendant-telecommunications company for damages stemming from the defendant's negligence in failing to maintain proper standards of maintenance and operation concerning its security system, which obligated the plaintiff to pay insurance proceeds after a burglary. *Id.* at *1. The defendant offered the testimony of John Donovan, the president of a telecommunications consulting firm and electrical engineer, to opine regarding the defendant's maintenance and operation of the security system, despite his lack of expertise in alarm systems, alarm science, or the particular system in place during the burglary. *Hartford Ins. Co. v. BellSouth Telecommunications, Inc.*, 04-20532-CIV, 2005 WL 5955692 at *2 (S.D. Fla. 2005). During his deposition, Donovan testified:

> Q. Do you believe that your qualified to render opinions on the responsibilities of alarms contractors?
> A. <u>I believe I'm qualified to render an opinion on some of the responsibilities of alarm contractors.</u>
> Q. Which ones are you qualified to render an opinion on?
> A. <u>Any responsibilities that would be in the category of just common logic</u> and anything that pertains to telecommunications and the connections of the circuits involved-involving Bellsouth in this case.

*Id.* (emphasis added). The plaintiff moved to exclude Donovan's testimony, in part because his testimony would not assist the trier of fact. The court agreed and excluded Donovan's testimony because it was not based on specialized knowledge and that the jury was "more than capable of applying the same common logic as Donovan proposes to testify." *Id.*

   Additionally, and notably, Donovan sought to render an opinion regarding the

defendant's responsibilities set out in the security system's "Tariff" (which presumably is a policy statement), but the court rejected the opinion on the ground that it **"fail[ed] to go beyond paraphrasing of the tariff."** *Id.* at *3 (emphasis added).

Likewise, Hagen's testimony should be excluded because his opinions fail to go beyond quoting and paraphrasing Facebook's SRR, which Hagen candidly admitted can be easily understood by anyone that can read:

> Q: So, you know, these policies that you've been referring to and that you significantly refer to in your report of Facebook, where do I find those?
>
> A: Throughout Facebook's website.
>
> Q: So anybody can look at them, right?
>
> A: Absolutely. You can either go through their forums and documentation center or you can Google and probably find them quite easily.
>
> Q: If you have a Facebook page, do they direct you to their terms and conditions and these policies?
>
> A: Sorry. Yes.
>
> Q: So essentially, they are available to the billons of users, correct?
>
> A: Yes.
>
> Q: As long as you understand they are probably written in different languages, correct?
>
> A: Yes.
>
> Q: Have you found any difficulties in understanding any of the terms, and conditions and policies and that sort of thing?
>
> A: No, Facebook not only provides most of their terms and conditions in relatively straightforward language. In other places throughout their website they use more descriptive language, while it is not official, but they explain it.

> **Q: So provided you are able to read, you should be able to understand them?**
>
> **A: I would say yes.**

[Hagen Dep. at 120:24-122:4] (emphasis added). The suitability of expert testimony on the issues upon which Hagen opines is further belied by his own testimony concerning his conversations with colleagues regarding how they thought Facebook would react to Defendant's request to remove Plaintiff's Facebook Page and migrate the Likes. Hagen testified:

> Q: And they gave you their opinions?
>
> A: Generally, their response was why is this a question? It's all in the Facebook policies and terms.
>
> Q: So in other words, if you were able to read the Facebook policies and terms you would understand that?
>
> A: That was their expectation.
>
> Q: Is that yours?
>
> A: Yes.

[Hagen Dep. at 117:14-19].  Regarding one of those conversations, Hagen stated:

> A: Again, his expectation was this is well stated in Facebook policy and I would not expect –
>
> Q: Kind of like a no-brainer?
>
> A: Yeah, I don't want to overstate it, but yes.
>
> Q: And that's how you feel, right?
>
> A: Yes.

[Hagen Dep. at 119:3-9].

 As Hagen essentially admits, the interpretation of Facebook's SRR does not require expert testimony because, if relevant, it is easily understood by a jury and, like the expert

testimony in *Hartford Ins. Co., supra,* is nothing more than an application of common logic. Hagen, who lacks any specialized experience in interpreting Facebook's SRR, cannot clarify any facts that are beyond the understanding of an average lay person. As such, his testimony should be excluded from jury consideration.

## V.  Hagen's Testimony Should Be Excluded Because it is More Prejudicial than Probative

Beyond its clear failure to meet the *Daubert* standard, Hagen's testimony should also be excluded as inadmissible under Federal Rule of Evidence 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (1993). Indeed, Rule 403 is particularly important in the expert context because it "can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* (citation omitted).

As detailed above, Hagen provides several opinions regarding "ownership" of property on Facebook. Yet, because he is admittedly not qualified to offer a legal opinion as to the definition of ownership, Hagen asserts an alternative definition of ownership that appears to have been unilaterally created and is prejudicially confusing:

> Q: What in your experience leads you to that conclusion that you can opine on ownership of anything that's on Facebook?
>
> A: I make no statement to legal ownership and I do not intend for that to be a legal statement, but I can speak to practical and management and strategic… I can speak to, as I said, practical and managerial strategic based as it relates to practice. That's all I can state.
>
> Q: Again, you are not opining on the true ownership in this case of Facebook page or anything connected with that?

A: No.

[Hagen Dep. at 151:24-152:15].

* * *

Q: Then we are going to have to go through things here in terms of you are going to opine on ownership?

A: I'm going to opine on reduction to practice.

Q: I don't understand what you mean by "reduction to practice."

A: I am not able to speak to the nuances of legal ownership, but as I stated earlier, I can speak to what I have observed with my own clients' engagements and discussed with my colleagues with what they have observed with their own client engagements. In our parlance, since we are not attorneys, we may speak of the terms ownership, when in practice we are not making an actual legal claim of ownership and that's the terminology that I use throughout my report, and I do not wish to have it extend beyond a professional parlance of being able to make strategic decisions regarding the usage and control of social media accounts, materials, assets and media.

[Hagen Dep. at 163:1-21].

It is clear from Hagen's convoluted definition of ownership that his testimony will serve only to confuse jurors about the concept of ownership as it relates to the case *sub judice*. Consequently, allowing such testimony to be presented will undoubtedly carry the risk that Plaintiff will be prejudiced to the extent the jury considers this legally-unsupportable definition of "ownership" instead of its legal definition. Thus, any possible probative value of Hagen's testimony (which is expressly denied) is heavily outweighed by the unfair prejudice and confusion that would result if heard by the jury and, as such, should be excluded.

WHEREFORE, Plaintiff respectfully requests this Court enter an Order excluding the opinions and testimony of Guy Hagen at trial and granting such other and further relief as it deems just and proper.

Respectfully submitted,

By**: */s/ Peter G. Herman*___
Fla. Bar No. 353991

TRIPP SCOTT, P.A.
*Counsel for Plaintiff*
110 SE Sixth Street, Fifteenth Floor
Ft. Lauderdale, Florida 33301
Tel: 954.525.7500
Fax: 954.761.8475

Peter G. Herman
pgh@trippscott.com
Fla. Bar No. 353991
Alexander D. Brown, Esq.
adb@trippscott.com
Fla. Bar No. 752665
Adam S. Goldman, Esq.
asg@trippscott.com
Fla. Bar No. 86761

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via CM/ECF this 20th day of June, 2014, to the attorneys on the below Service List.

By**: */s/ Peter G. Herman*___
Fla. Bar No. 353991

## SERVICE LIST

Karen L. Stetson, Esq.
Gray Robinson, P.A.
1221 Brickell Avenue Suite 1600
Miami, FL 33131
Karen.Stetson@gray-robinson.com
*Counsel for Defendant*